783 F.Supp. 1211 (1992)
Lawrence DANIELS, Plaintiff,
v.
Michael TERRELL, Defendant.
No. 90-1716C(6).
United States District Court, E.D. Missouri, E.D.
February 3, 1992.
*1212 Michael Vitale, Herzog, Crebs & McGhee, St. Louis, Mo., for Lawrence Daniels.
Terence J. Corrigan, Asst. Atty. Gen., State of Ill., Springfield, Ill., for Michael Terrell.

MEMORANDUM OPINION
GUNN, District Judge.
Plaintiff Lawrence Daniels asserts a claim under 42 U.S.C. § 1983 against defendant Michael Terrell. Plaintiff alleges the use of excessive and unreasonable force by defendant in effecting plaintiff's arrest.
At plaintiff's behest, the case was tried without a jury.
The credible evidence establishes the following facts. Defendant Michael Terrell is an Illinois State Highway Patrolman. On April 9, 1990 Trooper Terrell noticed plaintiff, with a passenger, driving a brown 1979 Cadillac in the East St. Louis, Illinois area. Trooper Terrell had been notified previously that plaintiff and the passenger had been evicted from an East St. Louis night club and that they "might be up to something." Plaintiff's car passed by on more than one occasion so the trooper commenced following it. Plaintiff's car ultimately ran through a red light, and Trooper Terrell pursued it with lights and siren activated. Suddenly, plaintiff's auto stopped and the passenger fired several shots at Trooper Terrell, striking his patrol car. There was no return fire. Plaintiff's car again sped off with Trooper Terrell in pursuit. Again, plaintiff stopped his vehicle at the foot of the bridge leading to the St. Louis, Missouri side of the Mississippi River. Both plaintiff and the passenger got out of the car and opened fire on Trooper Terrell. The plaintiff was wielding and firing a rifle; the passenger was shooting a revolver. Trooper Terrell was unable to return any fire but ducked down in the patrol car to avoid being struck by plaintiff's and the passenger's shots.
Plaintiff then sped across the Mississippi River bridge into St. Louis with Trooper Terrell in pursuit; the passenger continued to shoot at the trooper. Meanwhile, St. Louis law enforcement officials had been alerted to give assistance.
The Cadillac again stopped with one of the occupants  Trooper Terrell was unable to identify which one  again shooting at him. This time Trooper Terrell was able to return the fire. The chase led to a housing project, and the passenger jumped from the car, dropped his weapon and escaped into the project.
Plaintiff also jumped from his car, which came to rest after striking a stationary object, and turned and ran directly toward Trooper Terrell, who was still in his patrol car and slowing down as he reached the scene. The Trooper shot through his car window at plaintiff and then exited the car and fired more shots at the running plaintiff, striking him and causing him to fall. The trooper and St. Louis Police Officer Michael Janz who arrived at the scene then handcuffed plaintiff and called for an ambulance.
A search of the Cadillac revealed a rifle on the driver's side and a .357 Magnum revolver under the seat. The revolver dropped by the passenger was also found.
Although not seeing any weapon in the plaintiff's hand at the time he shot at plaintiff, Trooper Terrell believed from the previous assault that plaintiff was armed and intended to resume his shooting attack and that it was necessary to shoot to protect his life. The credible evidence offered by Trooper Terrell was that plaintiff certainly was not trying to surrender.
Officer Michael Janz, who had come to the assistance of Trooper Terrell, fully corroborated Terrell's belief that plaintiff's actions were not those of someone who was seeking to surrender. A housing project resident also clearly heard that plaintiff was commanded to "halt" before the shots that dropped him were fired.

CONCLUSIONS OF LAW
Plaintiff, who suffered extensive wounds, was charged and convicted of first degree assault and armed criminal action. *1213 Thus, it is a fact that plaintiff shot at Trooper Terrell and initiated the criminal assault. He may not gainsay that he fired at Trooper Terrell. That issue has been litigated fully in the state proceedings and is precluded from being tried again in this Court. See Allen v. McCurry, 449 U.S. 90, 103-04, 101 S.Ct. 411, 419-20, 66 L.Ed.2d 308 (1980); Tyler v. Harper, 744 F.2d 653, 655-56 (8th Cir.1984), cert. denied, 470 U.S. 1057, 105 S.Ct. 1767, 84 L.Ed.2d 828 (1985); State ex rel. O'Blennis v. Adolf, 691 S.W.2d 498, 503 (Mo.Ct.App.1985).[1]
That leaves only the matter of whether Trooper Terrell's actions involved excessive use of force. Manifestly they did not in this instance.
Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), provides the rubric applicable to the circumstances of this case:
Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.
Id. at 11-12, 105 S.Ct. at 1701.
The clear evidence in this case is that plaintiff shot at Trooper Terrell with a rifle thereby intending to inflict serious bodily harm or deadly force upon him. Thus, the evidence amply supports the trooper's reasonable belief that plaintiff posed a threat of serious physical harm to the officer. The credible evidence also supports the conclusion that, at a minimum, plaintiff was seeking to escape and was fired upon only after a warning had been given. Trooper Terrell's actions under those circumstances were entirely reasonable and permissible under Garner.
As stated in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989):
The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments  in circumstances that are tense, uncertain, and rapidly evolving  about the amount of force that is necessary in a particular situation.
In this instance Trooper Terrell had been the subject of deadly fire. Plaintiff had been running toward, and then away from, the trooper in an effort to escape in the same manner as his companion who had also been involved in the fire fight or, perhaps, to renew his feral attack. It was a reasonable assumption by the trooper that plaintiff was a death threat and was seeking to escape to continue his deadly doings.
Under the circumstances, Trooper Terrell was justified in applying the force used "because [he] could have reasonably believed that it was necessary under the circumstances." Fitzgerald v. Patrick, 927 F.2d 1037, 1039 (8th Cir.1991). Trooper Terrell had every reason to believe that plaintiff was still armed and mightily dangerous.
Judgment for defendant.
NOTES
[1] Defendant initially raised the issue of collateral estoppel, contending that plaintiff's conviction for first degree assault and armed criminal action puts to rest the issue of excessive use of force. But that specific issue was not litigated in the criminal action, so it is not subject to the bar of collateral estoppel. See Tyler v. Harper, 744 F.2d at 655; Hernandez v. City of Los Angeles, 624 F.2d 935, 936-37 (9th Cir.1980); State ex rel. O'Blennis v. Adolf, 691 S.W.2d at 503.