**Lee KRUEGER and Mary Delacour, Appellees,**

v.

**Don FUHR, Appellant.**

**No. 92–2427.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided April 9, 1993.

Rehearing Denied June 1, 1993.

---

John Wesley Housley, Springfield, MO, argued (Scott Tinsley, on the brief), for appellant.

Richard D. Bender, Springfield, MO, argued, for appellees.

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and HAMILTON,* District Judge.

HAMILTON, District Judge.

Don Fuhr, a Springfield, Missouri police officer, appeals from the district court's [1] denial of his summary judgment motion. We reverse.

### I.

In the early morning hours of June 6, 1989, Officer Don Fuhr was on patrol duty. By radio transmission, Officer Fuhr was informed that an assault had occurred at the Tri–States Laundry and that the suspect was a "white/male wearing black shirt with number 12 on it and bluejeans," and

---

\* The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, sitting by designation.

**1.** The Honorable James C. England, United States Magistrate Judge for the Western District of Missouri, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c) (1988 & Supp II 1990).

"will be armed with a knife." (Joint Appendix at 195). The dispatcher also stated that canine security was possibly in pursuit of the suspect. A subsequent radio transmission indicated that the suspect's name was Leon Krueger and that he was possibly an escapee from Alpha House, a residential halfway house in Springfield, Missouri. (Joint Appendix at 198). Another officer communicated the suspect's probable location and stated that he was "suppose [sic] to be on drugs and very high and had some type of a knife on him." (Joint Appendix at 199). Shortly thereafter, a second officer announced that the suspect had probably been spotted in the 1000 block of East Walnut.

Responding to this information, Officer Fuhr drove his police vehicle onto East Walnut. There he observed an individual fitting the description of the Tri–States Laundry assailant lying on his stomach between two parked automobiles. This individual was later identified as Leroy Krueger. Officer Fuhr exited his police vehicle, drew his service revolver, identified himself as a police officer and ordered Krueger to freeze. At that time, Leroy Krueger did not have a knife in his hand nor did Officer Fuhr notice a knife anywhere on Krueger's person.

Leroy Krueger began running down East Walnut and Officer Fuhr chased him for approximately 210 feet. Several times during this pursuit, Officer Fuhr ordered Krueger to freeze. When the officer had closed to within 3 to 4 yards of Krueger, he saw Krueger reach to the area of his right hip. He heard the sound of an object being pulled from Krueger's waistband area. Officer Fuhr testified at his deposition that Krueger pulled a knife from his waistband and was gripping it in his fist.

Officer Fuhr further testified that he believed that Krueger was going to turn and attack him with the knife. Officer Fuhr had been running "as fast as [he] could run" (Joint Appendix, at 48) and was fearful that he would be unable to stop in time to avoid the attack. Officer Fuhr slowed down, leveled his service revolver and fired four rounds at the center mass of Leroy Krueger's body. Two rounds struck Leroy Krueger in the back, a third round hit him in the base of the skull. Leroy Krueger died as a result of the wound to the base of the skull. During the subsequent investigation, a Springfield police officer found a knife with an exposed blade approximately 43 feet from the point where Krueger's right foot came to rest on the sidewalk.

Pursuant to 42 U.S.C. § 1983 (1988), Lee Krueger and Mary Delacour, the natural parents of Leroy Krueger, filed this action for monetary damages against Don Fuhr and the City of Springfield. Plaintiffs allege that Officer Fuhr violated their son's Fourth and Fourteenth Amendment rights by using excessive force when he shot and killed Leroy Krueger. On May 7, 1982, the trial court entered an order denying motions for summary judgment filed by Don Fuhr and the City. Upon reconsideration, the trial court entered summary judgment in favor of the City of Springfield but reaffirmed its denial of Don Fuhr's summary judgment motion. On appeal, Don Fuhr contends that the district court erred when it found that genuine issues of material fact precluded entry of summary judgment and, in the alternative, that the court erred when it denied Officer Fuhr's claim of qualified immunity.

## II.

The district court has yet to enter its final judgment in this case. However, denial of a claim of qualified immunity is an appealable final decision within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). It is true that in *Moutray v. Butts*, 985 F.2d 426 (8th Cir.1993), this court declined to review a denial of summary judgment where the district court failed to explicitly address the defendant's claim of qualified immunity. While the district court opinions in the instant case focused on the merits of the defendants' summary judgment motions and did not set forth the court's rationale in denying Defendant Fuhr's claim of qualified immunity, this court is satisfied that

the district court did in fact deny Defendant Fuhr's summary judgment motion both on the merits and on qualified immunity grounds.[2] Therefore, we conclude that we have jurisdiction to consider this appeal. Moreover, on appeal from a denial of qualified immunity this court has jurisdiction to resolve the case on the merits. *Gometz v. Culwell,* 850 F.2d 461, 463 (8th Cir.1988).

Summary judgment is appropriate when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When presented with a summary judgment motion, the court must determine whether any factual issues exist that may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are relevant and which are immaterial. Only disputes that might affect the outcome will properly preclude summary judgment. *Id.* at 248, 106 S.Ct. at 2510; *Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir.1992). In making this determination, the court must view the facts in the light most favorable to the non-moving party, giving such party the benefit of all reasonable inferences to be drawn from the facts. *St. Paul Fire & Marine Ins. Co. v. Federal Deposit Ins. Corp.,* 968 F.2d 695, 699 (8th Cir.1992).

### III.

The Fourth Amendment protects citizens from unreasonable search and seizure.[3] There is no question but that Officer Fuhr's actions constituted a seizure within the meaning of the Fourth Amendment. *Tennessee v. Garner,* 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). Thus, the issue before the court is whether

Officer Fuhr's use of deadly force to apprehend LeRoy Krueger was reasonable within the meaning of the Fourth Amendment.

■ It is well settled that police officers may use some degree of force in effecting a lawful arrest. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Determining whether the use of force is reasonable in any given instance requires careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " *Garner,* 471 U.S. at 8, 105 S.Ct. at 1699 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). The use of deadly force is constitutionally reasonable in certain limited circumstances:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701. *See also Ryder v. Topeka,* 814 F.2d 1412, 1419 (10th Cir.1987) (fleeing suspect poses threat of serious harm when he places officer in dangerous life-threatening situation or is fleeing from the commission of inherently violent crime). An officer's compliance with this standard must be assessed from the point of view of a reason-

---

**2.** The District Court's opinion discusses only Fuhr's defense "on the merits," and not his qualified immunity defense. But the Court notes that Fuhr's motion for summary judgment asserts the defense of qualified immunity, and its opinion then denies the motion without qualification. We read this as a rejection of qualified immunity, notwithstanding the opinion's failure to discuss the issue explicitly. However,

we take this opportunity to suggest that district courts clearly address the qualified immunity issue.

**3.** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.... U.S. Const. amend. IV.

able officer on the scene. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871.

On appeal, Officer Fuhr contends that the district court erred when it held that the distance the knife was found from Krueger's body and the fact that the bullets struck Krueger in the back create genuine issues of material fact. Officer Fuhr maintains, and we agree, that these facts are not material to a determination of whether the shooting was objectively reasonable.

It is undisputed that, at the time he first encountered Leroy Krueger, Officer Fuhr knew that a man fitting Krueger's description was suspected of committing an armed assault at the Tri–States Laundry. It is also undisputed that Officer Fuhr had been informed that the suspect was fleeing from police and was believed to be on East Walnut. Under those circumstances, it was objectively reasonable for Officer Fuhr to believe that the individual he was chasing had committed a crime involving the infliction or threatened infliction of serious physical harm. Furthermore, Officer Fuhr also knew that the suspect probably had a knife and was inebriated. It was objectively reasonable for Officer Fuhr to believe on the basis of this information he faced a serious and immediate danger of physical harm when Leroy Krueger pulled, or seemed to pull, a knife from his waistband.

Lee Krueger and Mary Delacour maintain that there is a genuine factual dispute as to whether their son actually had a knife at the time of the shooting. In support of this contention, Plaintiffs note that the knife was found approximately 43 feet from Krueger's right foot. They also suggest that the sound of a knife being pulled from a waistband is insufficiently loud or distinctive to be identified over the sound of running footsteps. Finally, Plaintiffs note that Officer Fuhr testified that the knife appeared to be the same color as Leroy Krueger's hand. Plaintiffs conclude that a reasonable fact-finder could determine on the basis of this evidence that Krueger was not armed at the time of the shooting.

Plaintiffs misapprehend the nature of the Fourth Amendment reasonableness inquiry. Reasonableness must be determined from the point of view of a reasonable officer in the situation, "rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872. An erroneous perception or belief does not violate the Fourth Amendment if such perception or belief is objectively reasonable. *Id.* We have already concluded that Fuhr's belief that he was facing an armed and dangerous suspect was objectively reasonable. Therefore, even assuming that Plaintiffs were able to establish that Krueger was unarmed at the time of the shooting, that fact would not preclude entry of judgment for Officer Fuhr.

Nor is the fact that Leroy Krueger was shot in the back sufficient to establish a genuine issue of fact regarding the reasonableness of Officer Fuhr's actions. Plaintiffs rely on *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328 (11th Cir.1988) for the proposition that a wound in the back raises serious issues of material fact regarding the use of excessive force. In *Samples*, the court of appeals reversed the district court's entry of summary judgment for the police officer in an excessive force case. The court determined that the evidence, including the fact that one of the six shots the officer fired hit plaintiffs' decedent in the back, raised serious factual disputes regarding the use of excessive force.

However, *Samples* is distinguishable from the instant case. The defendant officer in *Samples* claimed that his use of force was reasonable because the victim had been advancing on him with a knife when the shots were fired. The court determined that while it was possible to reconcile the officer's story with the physical evidence, the evidence also supported other contradictory explanations of the events leading up to the shooting. In the instant case, there is no evidence that requires us to attribute special significance to the fact that Officer Fuhr shot Krueger in the back. As Officer Fuhr notes, it is not remarkable

that an escaping felony suspect would be shot in the back.

■ The second prong of the *Garner* test is whether the use of deadly force was necessary to prevent escape. It is undisputed that Krueger was fleeing police apprehension at the time of the shooting. *Compare Daniels v. Terrell,* 783 F.Supp. 1211 (E.D.Mo.1992) (officer's use of deadly force objectively reasonable when plaintiff fired on officer and was running from police) *with Fitzgerald v. Patrick,* No. 88–0499–CV–W–5, 1990 WL 485439, 1990 U.S.Dist. LEXIS 1406. (W.D.Mo. Feb. 5, 1990) (suspect in trailer surrounded by police officers was not fleeing). It is true that other police officers were in the general area and it is possible, though not certain, that another officer might have apprehended Krueger if he eluded Officer Fuhr's foot pursuit. However, the Fourth Amendment does not require police officers to forgo the use of deadly force to prevent their own death or serious physical injury whenever there is a possibility that another officer might later apprehend the fleeing suspect. *See e.g. Fraire v. Arlington,* 957 F.2d 1268, 1276 (5th Cir) *cert. denied* — U.S. ——, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992) (use of deadly force to prevent officer's own death or serious bodily harm was justified); *Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991) (where suspect reached several times for firearm, officer justified in using deadly force to defend himself and others even where suspect "totally surrounded" by police officers). Thus, we conclude that Officer Fuhr's use of deadly force was necessary to prevent escape in accordance with the standards enunciated in *Garner.*

Finally, *Garner* requires the officer to give a warning "where feasible." Officer Fuhr ordered Krueger to freeze when he first encountered Krueger lying between two cars on East Walnut Street, and several times during the pursuit. There is no evidence that he gave a warning immediately prior to the shooting. However, we are satisfied that under the urgent circumstances facing Officer Fuhr, the absence of a warning immediately preceding the shooting does not render his use of deadly force constitutionally unreasonable.

Because we conclude that Officer Fuhr's actions were objectively reasonable and therefore did not violate Leroy Krueger's Fourth Amendment rights, it is not necessary to reach Appellant's contention that the district court erred when it denied his claim of qualified immunity.

### IV.

We reverse and remand to the district court for entry of summary judgment in favor of Don Fuhr.