57 F.3d 1069
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Cynthia BUNCH, Individually and as Administratrix of the
Estate of Aaron Matthew Bravard,
Plaintiff-Appellee Cross-Appellant,
v.
VILLAGE OF NEW LEBANON, et al., Defendants-Appellants Cross-Appellees.
 Nos. 94-4098, 94-4141.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1995.
 
 Before SUHRHEINRICH and DAUGHTREY, Circuit Judges, HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Cynthia Bunch brought this civil rights action under 42 U.S.C. Sec. 1983 against defendant Rodney Ables, a police officer employed by defendant Village of New Lebanon, the mayor and council members of the village and the Chief of the New Lebanon Police Department. Bunch alleges that Ables used excessive force when he shot and killed her son, Aaron Bravard. Defendants appeal the district court's order denying their motion for summary judgment on the basis of qualified immunity.[1] Because the order is appealable immediately as a final judgment under the collateral order doctrine, Walton v. City of Southfield, 995 F.2d 1331, 1336 (6th Cir.1993), and because we find that the applicability of qualified immunity involves a question of fact, we AFFIRM.
 
 I. FACTS
 
 2
 Bunch called the Montgomery County Sheriff's Office on January 28, 1992, to report a domestic dispute between her and her son. A police dispatcher subsequently informed Ables that a male individual was threatening his mother with a knife. The dispatcher instructed Ables to respond. When Ables arrived, Chief Carbaugh and Sergeant Lunsford of the New Lebanon Police Department and Patrolman Murphy of the Jackson Township Police Department had already arrived. According to Ables, he heard Bunch say that her son had threatened to kill her and to cut his wrists.
 
 
 3
 Thereafter, Ables entered the garage of the residence where he joined Lunsford and Murphy. Ables had drawn his weapon, then the three entered and searched the house.
 
 
 4
 Ables stated that he entered an L-shaped bathroom, and as he approached the shower, he detected movement to his right. According to Ables, as he heard a loud yell from the shower, Bravard leaped from the shower. Ables further stated that as he backed away, Bravard advanced with a knife held overhead in a threatening position. Ables claimed that as Bravard brought the knife downward toward Ables, Ables fired a single shot. Bravard was approximately two feet away when Ables shot him. The bullet struck Bravard in the left chest. Ables stated that these events happened in about three seconds and that he was in fear for his life and concerned for the safety of the other officers.
 
 II. ANALYSIS
 
 5
 The Fourth Amendment protects citizens from unreasonable search and seizure. Officer Ables' actions constituted a seizure within the meaning of the Fourth Amendment. Tennessee v. Garner, 471 U.S. 1, 7 (1985). To decide the issue before the court, we must determine de novo whether Ables' use of deadly force against Bravard was reasonable within the meaning of the Fourth Amendment. Yates v. City of Cleveland, 941 F.2d 444, 446 (6th Cir.1991). The use of deadly force is limited to situations in which the "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Garner, 471 U.S. at 11. An officer using deadly force is entitled to qualified immunity if "a reasonable officer could have believed [the seizure] to be lawful, in light of clearly established law and the information the [seizing] officer possessed." Hunter v. Bryant, 502 U.S. 224 (1991).
 
 
 6
 The district court denied defendants' motion for summary judgment based on qualified immunity, concluding that when there are "factual disputes surrounding a shooting such that the reasonableness of the shooting cannot be determined without determining which of competing versions of the facts are true, the reasonableness of the shooting and the applicability of the qualified immunity become questions for the jury." (District Court Opinion, p. 3) (citations omitted).
 
 
 7
 Ables' version of the facts, if unrefuted, entitles him to immunity; however, plaintiff has produced evidence that conflicts with Ables' rendition. First, plaintiff submitted the affidavit of an expert medical pathologist. The medical expert, Dr. Donald Schaffer, after reviewing the evidence, including the deposition testimony of Ables and lab reports, stated, "It is physically impossible for the gunshot wound to Bravard to have occurred at a time when Bravard was directly facing Ables as described in Ables' testimony." Schaffer instead believes that the evidence indicates that Ables shot Bravard as Bravard exited the shower. Given the physical layout of the bathroom and the shower enclosure, Bravard was facing the east wall of the bathroom and in no position to pose a threat to Ables.
 
 
 8
 Plaintiff also provided a diagram of the bathroom, indicating that the shower entrance is 14 inches wide when the bathroom door is open, and that one must step over a 14 and 3/4 inch tub enclosure to exit the shower. Bravard, at 5' 10" and 190 pounds was too large to leap in the manner described by Ables. Plaintiff contends that to exit the shower enclosure in the manner described by Ables, it would be necessary to push the bathroom door closed to widen the 14 inch opening; yet, Ables testified that he was standing in front of the open bathroom door when he was attacked by Bravard.
 
 
 9
 Ables argues that the bullet angle does not create a genuine issue of material fact because it is immaterial as to whether Ables was reasonably justified in acting to protect himself. To support this contention, defendants cite Krueger v. Fuhr, 991 F.2d 435, 437 (8th Cir.), cert. denied, 114 S.Ct. 386 (1993) (reversing a denial of summary judgment on the basis of qualified immunity even though the defendant officer had shot a fleeing suspect in the back because the officer believed that the suspect would turn and attack him with a knife). Although Krueger seemingly supports Ables' action given his confinement in a small bathroom and his proximity to Bravard, Krueger is distinguishable. First, the Krueger decision authorized deadly force as it was "necessary to prevent [the] escape" of a fleeing felon. Id. at 440. Second, the officer's version of events in Krueger was uncontested.
 
 
 10
 Our case is analogous to Samples v. City of Atlanta, 846 F.2d 1328 (11th Cir.1988), a case distinguished by the Krueger court. In Samples, the seizing officer stated the victim was advancing toward the officer with a knife when the officer shot him, yet the physical evidence showed that the victim was shot in the back. As occurred in Samples, here there is physical evidence calling into question the accuracy of the officer's explanation of what transpired. Schaffer has stated that the physical evidence is consistent with a version of events that would draw into question the reasonableness of Ables' conclusion that Bravard posed such a threat that shooting him was reasonable.
 
 
 11
 Accordingly, we AFFIRM the district court.
 
 
 
 *
 The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Plaintiff cross appeals the district court's holding that, as a matter of law, exigent circumstances existed to justify Ables' warrantless entry into plaintiff's house. Because this appeal is taken from a nonfinal order and is neither an appealable interlocutory order nor certified under Fed.R.Civ.P. 54(b), it is beyond our jurisdiction and is dismissed. Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744-45 (1976)