_____

No. 95-2635EM
_____

Diane Gardner; Kermit Gardner;      *
Amy Gardner; Jesse Gardner;         *
Sarah Gardner, by and through       *
their next friend and natural       *
mother Diane Gardner,               *
                                    *
        Appellants,                 *
                                    *
    v.                              *   On Appeal from the United
                                    *   States District Court
                                    *   for the Eastern District
Walter Buerger, "Buck" Sheriff      *   of Missouri.
of Jefferson County, Missouri,      *
as an individual and in his         *
official capacity; C. Partain,      *
Deputy Sheriff of Jefferson         *
County, Missouri, as an             *
individual and in his official      *
capacity,                           *
                                    *
        Appellees.                  *

                            _____

             Submitted:  January 12, 1996

                Filed:  April 29, 1996
                            _____

Before RICHARD S. ARNOLD, Chief Judge, JOHN R. GIBSON and BOWMAN, Circuit
      Judges.
                            _____

RICHARD S. ARNOLD, Chief Judge.


     This is a civil-rights case.  Deputy Sheriff Charles Partain, a
Jefferson County, Missouri, police officer, shot and killed Charles Gardner
while serving an <u>ex parte</u> order of protection.  Mr. Gardner's wife, Diane
Gardner, sued Deputy Partain and Jefferson

County Sheriff Walter Buerger under 42 U.S.C. § 1983. She claimed that Deputy Partain used excessive force when he shot Mr. Gardner, and that Sheriff Buerger failed to train Deputy Partain adequately. After Ms. Gardner presented her case to the jury, the District Court granted the defendants' motion for judgment as a matter of law, Fed. R. Civ. P. 50(a), citing Ms. Gardner's "failure of proof . . . as to what actually happened at the precise time of the shooting." Because we agree with Ms. Gardner that she presented enough evidence to permit a reasonable jury to decide that the defendants violated her husband's constitutional rights, we reverse.

I.

Ms. Gardner built her case almost entirely on her own and Deputy Partain's testimony.[1] We assume, for now, that this testimony, and the facts it tends to prove, are true. One evening in February 1992, Mr. and Ms. Gardner had a serious argument. Mr. Gardner demanded that Ms. Gardner leave the house, and she did. The next day she applied for an ex parte order of protection.[2] Deputy Partain was dispatched to serve the order and, on the way, he picked up Ms. Gardner at a corner store near her house. He asked her if there were any guns in the house, and she said there were about 30, locked in a safe. When Ms. Gardner and Deputy Partain arrived at the Gardner home, she waited in the car while he went up to the house. About two minutes later, Ms. Gardner heard a gunshot, and she ran into the house. Deputy Partain told her, "Lady, I had to shoot him. He was going to get a gun." He also

---

[1]Richard Webster, a volunteer firefighter, and Evan Steck, a friend of Ms. Gardner's and a Jefferson County deputy sheriff, also testified, but their testimony was brief and, for the most part, unrelated to the question before us.

[2]The order of protection required that Mr. Gardner not abuse, threaten to abuse, or disturb the peace of Ms. Gardner, and that he not enter the Gardners' house.

-2-

told her he had shot her husband in the back of the head.

Deputy Partain's testimony provides the only evidence about what happened inside the house; again, we assume this testimony is true. Deputy Partain testified that he knocked on the Gardners' door and Mr. Gardner cordially invited him in. But after Deputy Partain explained his purpose, and told Mr. Gardner he had to leave the house, Mr. Gardner became enraged and threatened to get a gun. Deputy Partain said something like, "You grab the gun and I will kill you," and he then "went after [Mr. Gardner]." The two men ended up in the middle of the dining room floor, with Mr. Gardner face down and Deputy Partain on top, gun drawn and pointed. Deputy Partain tried to use his handcuffs, but Mr. Gardner somehow got away. Mr. Gardner then tried to pick up a chair, but couldn't, because it was stuck under a table. Deputy Partain yelled, "Drop the chair" and "Don't do it. I'll shoot, I'll kill you." Deputy Partain admitted that Mr. Gardner never had or brandished a weapon, and that Mr. Gardner never hit him. No one testified about the shooting itself. We know only, from Ms. Gardner's testimony, that Deputy Partain shot Mr. Gardner in the back of the head.

That was Ms. Gardner's whole case.[3] After she rested, the defendants moved for judgment as a matter of law because Ms. Gardner had presented no evidence about the precise moment Deputy Partain killed Mr. Gardner. The defendants admitted Deputy Partain shot Mr. Gardner, but contended there was no evidence from which the jury could conclude that Deputy Partain used unreasonable and excessive force. The defendants insisted that Ms. Gardner was inviting the jury to "speculate" about how Mr. Gardner was killed, and that Ms. Gardner could not rest her case on the mere hope that the jury might disbelieve Deputy Partain. The District Court,

---

[3]Both parties went into more detail, fleshing out the events, in their opening statements, but these statements are not evidence.

citing Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993), granted the defendants' motion for judgment, reasoning that "[it is not] sufficient simply to say that Mr. Partain shot this man, killed this man, and was there to serve an order of protection," because there was no evidence "from which the jury could infer there was an excessive use of force . . .." Ms. Gardner now appeals, and we reverse.[4]

II.

We review de novo the District Court's decision to grant judgment as a matter of law. Schulz v. Long, 44 F.3d 643, 647 (8th Cir. 1995). Judgment as a matter of law is appropriate only when the nonmoving party fails to present enough evidence to permit a reasonable jury to decide in his favor. We do not judge witnesses' credibility, we give the nonmoving party the benefit of all reasonable inferences, and we look at the evidence in the light most favorable to him. Ibid. The evidence must point unswervingly to only one reasonable conclusion. Johnson v. Cowell Steel Structures, Inc., 991 F.2d 474, 478 (8th Cir. 1993). This demanding standard reflects our concern that, if misused, judgment as a matter of law can invade the jury's rightful province. See Boodoo v. Cary, 21 F.3d 1157, 1161 (D.C. Cir. 1994).

---

[4]The District Court's decision necessarily mooted Ms. Gardner's failure-to-train claim. The alleged failure to train "would have been an issue . . . only had [there been] a submissible case on the excessive use of force." See Abbott v. City of Crocker, Mo., 30 F.3d 994, 998 (8th Cir. 1994) (failure-to-train claim fails if officer is not liable on underlying excessive-force claim). Because we think Ms. Gardner presented enough evidence to defeat the defendants' motion for judgment, we do not need to address Ms. Gardner's failure-to-train claim here.

Ms. Gardner's lawyer hints, in his brief, at another claim, suggesting that the Court erred by "limiting the evidence that was admitted . . ." to the "time of the shooting." But counsel has not identified any particular objectionable evidentiary rulings, and we agree with the defendants that this claim is so poorly developed that we cannot review it meaningfully.

The Fourth Amendment forbids "unreasonable searches and seizures" by police officers. This prohibition protects not only our privacy and property; the Fourth Amendment is also a "primary source[] of constitutional protection against physically abusive government conduct." Graham v. Connor, 490 U.S. 386, 394 (1989). For Fourth Amendment purposes, a police officer "seizes" a person when he, by physical force or show of authority, limits that person's liberty. California v. Hodari D., 499 U.S. 621, 625-26 (1991). Terms like "seizure" and "intrusive governmental conduct," Graham, 490 U.S. at 395, cannot capture the facts of this case; it is an unavoidable understatement to observe that the shooting was a seizure. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995); Tennessee v. Garner, 471 U.S. 1, 9 (1985) ("The intrusiveness of a seizure by means of deadly force is unmatched."). But even if the translation is imperfect, we use the Fourth Amendment's objective-reasonableness standard to analyze excessive-force claims. Graham, 490 U.S. at 395; Schulz, 44 F.3d at 648.

We are careful not to indulge in armchair quarterbacking or exploit the benefits of hindsight when evaluating police officers' use of deadly force. It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard. See Cole, 993 F.2d at 1333-34. Police officers have tough jobs, and the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving . . .." Graham, 490 U.S. at 396-97.

When is a deadly-force seizure reasonable? We apply the standard provided in Tennessee v. Garner: A seizure-by-shooting is objectively reasonable when "the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3; Ludwig, 54 F.3d at 471; Schulz, 44 F.3d at

-5-

649. We must balance "the nature and quality of the intrusion on . . . Fourth Amendment interests against the countervailing government interests . . .." _Graham_, 490 U.S. at 396 (citation and internal quotations omitted). And as the District Court correctly observed, our analysis focuses on the reasonableness of the seizure itself - here, the shooting - and not on the events leading up to it. See _Ludwig_, 54 F.3d at 471; _Schulz_, 44 F.3d at 648-49; _Cole_, 993 F.2d at 1333.

So, to defeat the defendants' motion for judgment as a matter of law, Ms. Gardner needed to present enough evidence to permit a reasonable jury to conclude that Deputy Partain's use of deadly force was objectively unreasonable. The District Court concluded that Ms. Gardner's case rested on speculation and on an appeal to the jury to disbelieve Deputy Partain's story, and held that Ms. Gardner's failure to introduce evidence about the "seizure itself" required judgment as a matter of law. We disagree.

We do not agree that this was the right way to frame Ms. Gardner's case, for two reasons. First, this is not a case in which a plaintiff is armed with only the hope that jurors might disbelieve witnesses' testimony.[5] Quite the contrary, Ms. Gardner's case depends on the jury's _believing_ Deputy Partain's testimony - it's practically all she has. Ms. Gardner wants the jury to believe, and to draw inferences from, the following

---

[5]_Radio City Music Hall Corp. v. United States_, 135 F.2d 715 (2d Cir. 1943), is an example of such a case. In _Radio City_, a tax case written by Judge Learned Hand, the trial court granted summary judgment for the plaintiffs. The government apparently conceded that, if the plaintiff's witnesses' depositions were true, there was no issue for a jury. Judge Hand wrote that the government's hope that the jury might disbelieve the witnesses' testimony, even though it had fully cross-examined the witnesses and not shaken their stories, was not enough to create a "genuine issue" sufficient to defeat the motion for summary judgment. A party must "specify some opposing evidence which it can adduce and which will change the result." _Id._ at 718.

-6-

evidence: Deputy Partain went into the Gardners' house to serve an order of protection and came out a few minutes later having shot Mr. Gardner through the back of the head with a .357 Magnum. Deputy Partain repeatedly threatened to shoot Mr. Gardner. Mr. Gardner never struck Deputy Partain, and he never used or even had a weapon. Finally, Ms. Gardner told Deputy Partain that the guns in the house were in a safe. Ms. Gardner wanted the jury to use and reason from this evidence, not disbelieve it.

Second, we do not think Ms. Gardner was asking the jurors to "speculate" about what happened to Mr. Gardner. Just as a party cannot defeat a motion for judgment as a matter of law with speculation alone, a party cannot win a motion for judgment by labelling as "speculation" those reasonable inferences it would rather the jury not draw. See McAnally v. Gildersleeve, 16 F.3d 1493, 1497 (8th Cir. 1994) (noting difference between conjecture and reasonable inference); City of Omaha Employees Betterment Ass'n v. Omaha, 883 F.2d 650, 651 (8th Cir. 1989).[6] Ms. Gardner definitely presented a bare-bones case. But we do not think she failed to present evidence of the reasonableness of the shooting itself, even though she never introduced testimony describing the

---

[6]The Supreme Court has observed:

> It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. . . . [It is] immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.

Lavender v. Kurn, 327 U.S. 645, 653 (1946).

moment Mr. Gardner was shot.[7]  True, unreasonable police behavior before a shooting does not necessarily make the shooting unconstitutional; we focus on the seizure itself - here, the shooting - and not on the events leading up to it.  But this does not mean we should refuse to let juries draw reasonable inferences from evidence about events surrounding and leading up to the seizure.

Our discussion in Krueger v. Fuhr, 991 F.2d 435 (8th Cir.), cert. denied, 114 S. Ct. 386 (1993), is helpful here.  In Krueger, the parents of a fleeing suspect who was shot and killed by a police officer brought an excessive-force claim.  We reversed the District Court's denial of summary judgment for the officer.  We noted, inter alia, that evidence the deceased young man had been shot in the back was not relevant to the reasonableness inquiry.  Because the suspect was, everyone admitted, fleeing, it was not significant that he was shot in the back.  Id. at 439. We contrasted the facts in that case with those in Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1331-32 (11th Cir. 1988), a case in which, we noted, it was relevant that the plaintiff's decedent had been shot in the back.  In Samples, there were no witnesses to the killing other than the defendant police officer, who claimed the victim was advancing on him with a knife when he was shot.  The Court noted that the evidence supported contradictory interpretations of the events, and held that because the victim was shot in the back, a jury could reasonably infer that the shooting was unreasonable.  Therefore, summary judgment was inappropriate.

---

[7]Ms. Gardner's lawyer said, at oral argument, that he decided not to ask Deputy Partain about the moment of the shooting because he knew he could not rebut the Deputy's testimony.  Deputy Partain is, of course, the only surviving witness to the shooting.  This is a common problem for plaintiffs in excessive-force cases.  See, e.g., Samples v. Atlanta, 846 F.2d 1328, 1331 (11th Cir. 1988) ("Because there were no witnesses to the incident, the only available account of the event comes from [the officer] himself.").

-8-

We think Ms. Gardner's case is a lot like Samples. She presented evidence from which the jury could reasonably have concluded that the shooting of Mr. Gardner was an unreasonable and excessive use of force. The evidence permitted was relevant to such an inference, unlike the evidence in Krueger. Importantly, in both Krueger and Samples, the Court recognized that the jury may answer the ultimate question - whether the use of deadly force was reasonable - by drawing inferences from relevant evidence about the surrounding circumstances. See also Ludwig, 54 F.3d at 472-74 (discussing factors relevant to the reasonableness of police officer's shooting, such as evidence of the victim's mental instability, distance to the nearest bystander, the number and location of bystanders, etc.). In our view, Ms. Gardner simply asked the jury to reason; that is, to draw the not extraordinary inference from uncontradicted testimony that an unarmed man was shot in the back of the head to the conclusion that the shooting was unreasonable. This conclusion is, admittedly, not the only possible one.[8] Ms. Gardner may not yet have proved the "seizure" was unreasonable, but she does not have to, at least not to us. She needed only to present enough evidence to permit a reasonable jury to infer that Officer Partain used excessive force.

The defendants rely on Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993), and Schulz v. Long, 44 F.3d 643 (8th Cir. 1995). In Cole, police officers shot the driver of an eighteen-wheeler after a

---

[8]In another context, the District of Columbia Circuit noted:

> "[T]here is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion. The law is not so exacting that it requires proof . . . by testimony so clear that it excludes every other speculative theory." Elliott v. James, Inc., 507 F.2d 1179, 1184 (D.C. Cir. 1974) (quotation omitted).

dramatic high-speed chase on the interstate. We held that, for Fourth Amendment purposes, the "seizure" did not occur during pursuit, or when the officers fired shots at the truck's tires, or even when the officers unsuccessfully tried to stop Cole using a "rolling roadblock." Instead, Cole was seized when he was "struck by the shot of [the officer's] revolver," 993 F.2d at 1332. We examined "only the seizure itself, and not the events leading up to the seizure, for reasonableness under the Fourth Amendment." Id. at 1333. We concluded that, given the information the officer had when he decided to shoot Cole, and given that Cole posed a serious threat to the officers' and others' safety, it was not objectively unreasonable for the officer to use deadly force. Id. at 1333-34. In Schulz, a police officer shot the plaintiff, a paranoid schizophrenic who had barricaded himself in his parents' basement. At the moment he was shot, the plaintiff, armed and ready with a double-bladed axe, was approaching an officer who was entangled in the flotsam barricade. Mr. Schulz claimed the officer used excessive force. As in Cole, we examined the seizure itself, and not its elaborate prelude. Schulz, 44 F.3d at 647-48. We affirmed the District Court's decision to exclude evidence about whether the officers had created the need to use force by mishandling the stand-off because this evidence was not related to the reasonableness of the seizure itself.

Cole and Schulz do not help the defendants in this case. We agree with them that Mr. Gardner was "seized" when he was shot, not before,[9] and that Ms. Gardner must present evidence that the

_____

[9]Mr. Gardner was also seized once before the shooting, when Officer Partain subdued him on the floor. But if someone is "seized," and then somehow gets away, as Mr. Gardner did, the first seizure "does not continue during the `period of fugitivity,'" Ludwig, 54 F.3d at 471 (quoting California v. Hodari D., 499 U.S. 621, 625 (1991)). Thus, several distinct seizures may occur during a single course of events or encounter with the police. Ibid. Here, Ms. Gardner claims only that Mr. Gardner was unreasonably seized when he was killed, not when he was subdued.

seizure itself, not its prologue, was unreasonable before she can get to a jury with her § 1983 claim.  But there was no evidence in either <u>Cole</u> or <u>Schulz</u> that the shooting itself was unreasonable, or from which such unreasonableness could permissibly have been inferred.  In <u>Cole</u>, an out-of-control truck driver was barrelling down the interstate, creating grave danger both to police officers and to other drivers.  And in <u>Schulz</u>, the psychotic plaintiff was advancing on a police officer with a double-bladed axe.  Given these facts, we found that the use of force was objectively reasonable.  In this case, by contrast, we know that an unarmed man was shot in the back of the head.  From this evidence, Ms. Gardner wants the jury to infer that the shooting itself, not just the surrounding circumstances, was unreasonable.  Unlike the evidence in <u>Cole</u> and <u>Schulz</u>, the evidence in this case permits such an inference.

## III.

We do not have to decide whether Deputy Partain violated the Fourth Amendment; that is up to the jury.  While a party must produce more than the proverbial "mere scintilla" of evidence to defeat a motion for judgment, see <u>City of Omaha</u>, 883 F.2d at 651, demonstrable certainty, or a demonstration requiring no inferences, is <u>not</u> required.  We do not think Ms. Gardner's evidence is speculation masking as substance, and because Ms. Gardner presented enough evidence to defeat the defendants' motion for judgment at the close of her case, the District Court's decision is reversed, and the cause remanded for a new trial.

It is so ordered.

A true copy.

      Attest:

             CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.