# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 00-2505

—————

Doris Thompson; Thomas Thompson,   *
Jr.; Ashley Thompson, By and Through   *
Her Mother and Next Friend, Grace   *
Jackson,   *

                                *   Appeal from the United States
          Appellants,   *   District Court for the
                                *   Eastern District of Missouri.
          v.   *
                                *

Bryan Hubbard; Michael Washington;   *
City of Pine Lawn,   *
                                *
          Appellees.   *

—————

Submitted: May 17, 2001

Filed: July 30, 2001

—————

Before WOLLMAN, Chief Judge, HANSEN, Circuit Judge, and BARNES,[1]
    District Judge.

—————

WOLLMAN, Chief Judge.

      After Ravone Thompson was shot and killed by police officer Bryan Hubbard,
his parents and his daughter brought an action for damages under 42 U.S.C. § 1983

---

      [1]The Honorable Harry F. Barnes, United States District Judge for the Western
District of Arkansas, sitting by designation.

against Hubbard, Michael Washington, who is Hubbard's supervisor, and the city of Pine Lawn, alleging excessive use of force in violation of Thompson's civil rights. The district court[2] granted summary judgment for the defendants. We affirm.

## I.

Responding to a report of shots fired and two suspects fleeing on foot from the scene of an armed robbery in Pine Lawn, Missouri, Hubbard approached Thompson as he was getting into his car. Thompson fit the description of one of the robbery suspects, a black man wearing a blue and gold jacket, and was in an area where, based on the direction of their flight, Hubbard believed the suspects might be. Thompson initially appeared to surrender, but then turned to flee. Hubbard attempted to grab him, but succeeded only in pulling off his jacket.

A foot chase ensued, ending when Thompson ran into the space between two buildings and climbed over a short fence. According to Hubbard, Thompson got up from the ground, looked over his shoulder at Hubbard, and moved his arms as though reaching for a weapon at waist level. Thompson's back remained turned toward Hubbard and obscured his hands from Hubbard's view. Hubbard yelled, "stop," and when Thompson's arms continued to move, he fired a single shot into Thompson's back just below his right shoulder blade. Thompson died from the wound. No weapon was found on his body. Officer Marvin Berry, who had followed most of the foot chase in a patrol car, stated that he attempted to look down the space between the two buildings where he had seen Thompson and Hubbard run, but that he neither saw nor heard the shooting, leaving Hubbard as the lone surviving witness to the shooting.

---

[2]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, hearing the case by consent of the parties pursuant to 28 U.S.C. §636(c).

We review the district court's grant of summary judgment de novo, applying the same standard as that court applied, and viewing the evidence in the light most favorable to the plaintiffs. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). Summary judgment is appropriate where there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Id. at 469-70. "In essence, we must inquire 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 470 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)).

The § 1983 claims will not lie against either Hubbard and Washington individually or against the city unless plaintiffs can prove an underlying violation of Thompson's Fourth Amendment rights. See Krueger v. Fuhr, 991 F.2d 435, 440 (1993). We analyze a claim of excessive force in apprehending a suspect in the light of the Fourth Amendment's prohibition against unreasonable seizures. Graham v. Connor, 490 U.S. 386, 394 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "[T]he question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. We have held that deadly force is justified where the totality of the circumstances give the officer probable cause to believe that a fleeing suspect poses a threat of serious physical harm to the officer or to others. Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998).

Thus, to defeat the motion for summary judgment, the plaintiffs needed to present enough evidence to permit a reasonable jury to conclude that Hubbard's use of deadly force was objectively unreasonable. See Gardner v. Buerger, 82 F.3d 248, 252 (8th Cir. 1996). We conclude that summary judgment was appropriate in this case because Hubbard's use of force, as he describes it, was within the bounds of the Fourth

Amendment, and all of the evidence presented to the district court is consistent with that account. Compare Krueger, 991 F.2d at 439 (summary judgment against plaintiffs appropriate despite the fact that the suspect was shot in the back where such a shot was consistent with the reasonable use of force described by the officer) with Gardner, 83 F.3d at 253 (summary judgment inappropriate where officer's own account of shooting raised genuine issue as to its reasonableness). The plaintiffs may not stave off summary judgment "armed with only the hope that the jury might disbelieve witnesses' testimony." Gardner, 82 F.3d at 252.

We disagree with the plaintiffs' contention that if, as Hubbard maintains, Thompson turned and looked at him while the two were in close proximity and moved as though reaching for a weapon, a jury could conclude that Hubbard's use of deadly force was objectively unreasonable because Hubbard should have considered the fact that the waistband of Thompson's sweat pants may not have been strong enough to hold a gun. An officer is not constitutionally required to wait until he sets eyes upon the weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun. See Ryder v. City of Topeka, 814 F.2d 1412, 1419 n.16 (10th Cir. 1987) (concluding that, because a requirement that a suspect actually have a weapon would place police in "a dangerous and unreasonable situation . . . whether a particular seizure is reasonable is dependent on the 'totality of the circumstances,' and not simply on whether the suspect was actually armed"). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. Moreover, neither the plaintiffs' attacks on Officer Berry's credibility nor anything else in the record undermines Hubbard's credibility. The evidence adduced by the plaintiffs is simply insufficient to support even an inference that Hubbard is lying, nor is it sufficient to satisfy the plaintiffs' burden of proving that his actions were not objectively reasonable. However tragic

Thompson's death, plaintiffs have failed to come forward with sufficient evidence to justify submitting their case to a jury.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.