CLD-165                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3160
_____

AZIZ SALAAM,
Appellant

v.

P/O TRAVIS WOLFE; P/O BARRY DELAGOL, individually and in their
official capacity as Police Officers for the City of Philadelphia;
CITY OF PHILADELPHIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-14-cv-02055)
District Judge:  Honorable Berle M. Schiller
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
April 16, 2020
Before:  JORDAN, KRAUSE, and MATEY, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 29, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Aziz Salaam appeals from the District Court's entry of summary judgment in favor of defendants. Because the appeal fails to present a substantial question, we will summarily affirm. See 3d Cir. I.O.P. 10.6.

Salaam brought this action pursuant to 42 U.S.C. § 1983 against Philadelphia police officers Travis Wolfe and Barry Delagol, as well as the City of Philadelphia. Salaam alleged that Wolfe and Delagol used excessive force against him in violation of his Fourth and Fourteenth Amendment rights. He also brought state law claims for battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. The District Court appointed counsel, dismissed the claims against the City, and, after discovery, entered summary judgment in favor of the defendant officers, concluding that their use of force was reasonable as a matter of law under the Fourth Amendment and that the state law claims were barred by Pennsylvania's Political Subdivision Tort Claims Act (PSTCA). This appeal ensued.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. See Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to

2

judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Kaucher v. County of Bucks</u>, 455 F.3d 418, 422-23 (3d Cir. 2006).[1]

In evaluating Salaam's excessive force claims, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test.  <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395, 397 (1989).[2]  This is a "highly individualized and fact specific" inquiry, in which we examine the totality of the circumstances confronting the officer.  <u>Santini v. Fuentes</u>, 795 F.3d 410, 417 (3d Cir. 2015).  In particular, we consider (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest or attempting to flee.  <u>Graham</u>, 490 U.S. at 396.  We must not judge the reasonableness of the police officer's conduct "with the 20/20 vision of hindsight"; rather, we must consider that police officers make "split-second judgments

---

[1] To the extent that Salaam seeks to appeal the District Court's prior order granting the City of Philadelphia's motion to dismiss for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6), we exercise plenary review, <u>see</u> <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 128 (3d Cir. 2010), and discern no error.  The City cannot be held liable in a § 1983 action on a theory of respondeat superior, and Salaam failed to allege facts demonstrating the existence of a municipal policy or custom that led to the alleged constitutional violations.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978); <u>Mulholland v. Gov't Cty. of Berks</u>, 706 F.3d 227, 237 (3d Cir. 2013).  Although the dismissal was without prejudice, Salaam did not amend his complaint to address the deficiencies within the time allowed for by the District Court.

[2] The District Court properly denied Salaam's Fourteenth Amendment claim, as the Supreme Court has made clear that an excessive force claim in this context is governed solely by the Fourth Amendment.  <u>Graham</u>, 490 U.S. at 395.

– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97.

We agree with the District Court that Salaam's excessive force claims fails as a matter of law.[3] There were significant disputed facts surrounding the events giving rise to the claims. However, as the District Court explained, even viewing the facts in the light most favorable to Salaam, no reasonable jury could have concluded that the use of force violated his constitutional rights. Those facts are summarized as follows.

Salaam, while under the influence of PCP, rear-ended a car driven by Jamar McRae in a residential neighborhood. Two Temple University security guards immediately arrived on the accident scene on bikes. McRae started yelling at Salaam, who heard a "pop" and "panicked." Salaam got out of his car with a gun and fired ten shots into the air, causing McRae and the security guards to run for cover. McRae called 911 and reported that the driver who hit his car had a gun and was firing it. Officers Delagol and Wolfe responded separately to a police radio report of an active shooter.[4] Once on the scene, Delagol asked the security guards, who were bent down behind a car,

_____

[3] Pursuant to this conclusion, the defendant officers were entitled to qualified immunity. See Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018) (noting that "[q]ualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

[4] A minute later, a second radio call went out indicating "Shots fired at police. . . . Shots fired at Temple police." In their depositions, Delagol testified that he heard "shots fired" and "assist the officer," and Wolfe testified that what he heard led him to believe that an officer "was being fired upon." See District Court Docket (DCD) #46 at 75, 84.

4

where "the guy with the gun" was. DCD#46 at 75. They pointed down the street, where Delagol went, turned the corner, and saw Salaam walking away with a gun in his right hand.[5] Delagol followed Salaam. When Wolfe arrived, he followed the officers[6] pursuing Salaam, who led them from the scene into a walkway surrounding some homes, then turned left onto an alleyway behind the homes, and then left again into a walkway on the other side of the homes. Delagol was yelling at Salaam to drop his gun; Salaam did not hear him. As he approached the end of the walkway, Salaam heard what he believed to be a police officer saying, more than once, "stop, freeze."[7] DCD #47-2 at 122-23. He put his arms up in the air, and, still holding the gun in his right hand, started to turn towards his right to face the officer. Before Salaam turned halfway around, the officers started shooting at him; Salaam dropped the gun and fell to the ground. Delagol discharged his firearm four times, and Wolfe discharged his firearm five times, both in rapid succession. Although disputed by the officers, Salaam maintains that several of the shots were fired after he fell to the ground.

With respect to Salaam's claim that the officers' initial use of deadly force was

---

[5] Salaam testified that, at the time of the incident, he was recovering from a foot injury which affected his mobility.

[6] A third Philadelphia police officer, Eyleen Archie, responded to the scene and pursued Salaam. She witnessed the events but did not use force against Salaam.

[7] Salaam testified that, up until that point, he did not know anyone was following him, and that he never saw any police officer prior to being shot.

unconstitutional, the undisputed facts show that the defendant officers acted reasonably under the circumstances. Although they did not witness Salaam fire his gun, the officers were aware that shots had been fired, and could reasonably conclude that Salaam, who was walking away from the scene with a gun in his hand, was the shooter and that he was attempting to flee. Even if Salaam did not hear the commands to drop his gun, the police radio recording confirms that Delagol gave them. With the knowledge that Salaam failed to comply with the instruction to stop and disarm, a reasonable officer could believe that when Salaam started to turn towards them, with his gun in the leading-hand, that he posed a serious risk of harm to them and those around them. See Kisela, 138 S. Ct. at 1152 ("Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."). Even assuming, as Salaam maintains, that he did not even turn halfway before the shooting began, the defendants' split-second decision to employ deadly force was objectively reasonable. Graham, 490 U.S. at 397; see Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011) ("Waiting [for the suspect who moves toward a gun to draw it] could well prove fatal. Police officers do not enter into a suicide pact when they take an oath to uphold the Constitution.") (citing Krueger v. Fuhr, 991 F.2d 435, 439 (8th Cir. 1993) (shooting was reasonable where, during a foot chase of an armed assault suspect, the suspect suddenly reached into his waistband despite having been ordered to freeze)).

Salaam also claimed that, assuming the initial use of force was objectively reasonable, the officers' continued use of force after he fell to the ground was unjustified. Salaam maintains that he dropped the gun when he was first shot and that the officers continued to fire several of the bullets after he was unarmed and on the ground. For support, he relies on our decision in Lamont, where we determined that the defendant state troopers were not entitled to qualified immunity for their continued use of deadly force after the threat from the suspect was eliminated. 637 F.3d at 185. In that case, we held that the troopers acted reasonably in their initial use of deadly force when the suspect quickly pulled his right hand out of his waistband "as though he were drawing a pistol." Id. at 184. However, although the suspect's "weaponless right hand was fully visible immediately after the troopers began firing, the troopers continued to fire for roughly 10 seconds, shooting a total of 39 rounds," and "11 of the 18 bullets that struck [the suspect] hit him from behind." Id. We held that, under the circumstances, a reasonable jury could determine that "the troopers improperly continued firing after [the suspect] had turned away from them and no longer posed a threat." Id. at 184-85.

The facts in this case are materially different than those in Lamont and do not create a triable issue for the jury. Salaam was visibly armed, and the officers shot a total of nine bullets between them; seven bullets hit Salaam and one grazed him. Salaam admits that he was still standing when the third shot hit him and that he does not know for sure if any other bullets hit him before he hit the ground. DCD#46 at 57. And it is undisputed that the bullets were fired from the officers' semi-automatic handguns in

continuous, rapid succession.[8]  Moreover, it is also undisputed that Salaam fell down next to his gun.  Under these circumstances, where the events were "rapidly evolving" and there is no evidence that the officers intentionally fired after the perceived threat had been eliminated, no reasonable jury could conclude that their actions constituted a constitutionally impermissible use of force.  Graham, 490 U.S. at 397.

Finally, we agree with the District Court that, because the defendants are entitled to qualified immunity on the federal claims, Salaam's state law claims are foreclosed.  See Vargas v. City of Phila., 783 F.3d 962, 975 (3d Cir. 2015) (stating that the "PSTCA provides immunity to municipalities and its employees for official actions unless the employee's conduct goes beyond negligence and constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" (quoting 42 Pa. Cons. Stat. § 8550)); see also Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (recognizing that "the term 'willful misconduct' is synonymous with the term 'intentional tort'" (citation omitted)).

Based on the foregoing, we will summarily affirm the District Court's judgment.

---

[8] Salaam admitted in his Counterstatement of Undisputed Material Facts that "Officer Delagol fired four shots without pausing." DCD#47-1 at 13, ¶ 41.  He also testified that the shots were coming "back to back" and "at the same speed," and he agreed that the officers "were firing as fast as they could." DCD#46 at 57, #47-2 at 41, 44.