993 F.2d 1328
 Elaine COLE; Christina Elaine Cole; Carlie Deigh Cole, by
and through next friend Elaine Cole; Candie Leigh
Cole, by and through next friend Elaine
Cole, Appellees,
v.
C.E. BONE, Trooper; Nathan K. Brown, Trooper; F.T.
Martinez, Jr., Trooper; Royal F. Messick, Trooper; Randall
R. Rice, Trooper; Gilbert L. Rodenburg, Trooper; Jeffrey
L. Smith, Trooper; D.S. Stewart, Trooper; Randall S.
Beydler, Corporal; D.E. Holt, Corporal; F.M. Mills,
Lieutenant; P.C. Spire, Sargeant; C.E. Fisher, Colonel;
John H. Ford, Colonel; E.F. Christman, Major; R.G. Biele,
Captain; G.P. Corbin, Captain, Appellants.
 No. 92-2245.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 14, 1993.
Decided May 17, 1993.
Rehearing and Rehearing En Banc Denied July 12, 1993.
*
 
 Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, MO argued (Elizabeth L. Ziegler, on the brief), for appellants.
 Justine E. Del Muro, Kansas City, MO, argued (Dennis E. Egan, on the brief), for appellees.
 Before WOLLMAN and BEAM, Circuit Judges, and BOGUE,* Senior District Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 The defendants appeal from the district court's denial of their motion for summary judgment in this action brought under 42 U.S.C. § 1983 against seventeen members of the Missouri State Highway Patrol. We reverse and remand.
 
 I.
 
 2
 This case arises from a high speed pursuit on the east-bound lane of Interstate 70 that ended with the death of David Cole. Around noon on July 4, 1988, David Cole and his brother, Todd, were on their way to Kentucky in an eighteen-wheel tractor-trailer unit on their return trip from New Mexico. For some unknown reason, David Cole drove the truck at a high speed through a toll booth in Bonner Springs, Kansas, without stopping to pay the toll. When a Kansas state trooper began pursuing the truck, David refused to stop. Todd pleaded with David to pull over, but David responded that he had the situation under control and began driving even faster. As the truck approached Kansas City, Missouri, and the traffic became heavier, David Cole continued to drive recklessly. Kansas City police officers began pursuing the truck once it crossed the state line and entered the city.
 
 
 3
 Several Missouri State Highway Patrolmen became involved in the pursuit east of Kansas City, about twenty miles into Missouri. These patrolmen had learned of the fleeing truck over their police radios. They had received a report that the truck, while being pursued by Kansas City police officers, had travelled through Kansas City at speeds exceeding ninety miles per hour and had passed traffic on both shoulders of Interstate 70. The report also said that the truck had attempted to ram several police cars.
 
 
 4
 Troopers Rice and Martinez, in separate vehicles, entered Interstate 70 in front of the truck; Trooper Messick and Corporal Holt, also in separate cars, were following the truck. Rice, who was in the left lane, and Martinez, who was in the right lane, first attempted to execute a "rolling roadblock"; that is, they attempted to slow their vehicles gradually to force the truck to also slow down and eventually stop. This procedure failed, however. According to the troopers, whenever they slowed their vehicles, the truck would accelerate rather than slow down.
 
 
 5
 After the rolling roadblock had failed, Trooper Messick attempted to disable the truck by firing his shotgun into the trailer's wheels. Although Messick succeeded in flattening one trailer tire, the truck continued to speed along on its remaining tires. Messick was unable to fire any more shots at the trailer's tires because every time he attempted to pull alongside the trailer, Cole would observe Messick in the truck's side-view mirror and swerve towards Messick's patrol car.
 
 
 6
 Corporal Holt then ordered that a stationary roadblock be set up at the forty-four-mile marker of Interstate 70. Troopers Brown, Smith, and Rodenburg arranged their patrol cars in the passing lane of the interstate so as to funnel the truck into a single lane. This arrangement left an escape route for the truck in case Cole decided to run the roadblock--which he did. Although Cole could see the roadblock from one-half mile away, he did not slow down. As the truck sped past the roadblock, the troopers fired their shotguns at the tractor's tires and radiator. Although a tire on one of the tractor's two rear axles was blown out, the truck continued speeding down the highway.
 
 
 7
 Throughout the pursuit, Troopers Rice and Martinez remained in front of the truck, which continued to travel at speeds exceeding ninety miles per hour. Because the holiday traffic on the interstate remained congested, the troopers were constantly attempting to remove civilian traffic from the truck's pathway, sometimes by forcing motorists to drive off the roadway onto the shoulder and median by use of the red lights, sirens, and the maneuvering of the patrol cars. The two troopers used two methods to slow the truck and prevent it from hitting their vehicles and the vehicles of civilians. Rice was able to slow the truck temporarily when it approached traffic by placing his shotgun on the roof of his patrol car so that Cole could see it. Rice displayed his shotgun approximately twenty times in an attempt to prevent the truck from hitting motorists. Trooper Martinez slowed the truck and attempted to disable it by firing several shots at it. Rice stated that without these tactics the truck would have struck the officers' patrol cars as well as civilian vehicles. He stated further that, as it was, Cole forced more than one hundred cars off the road or out of the truck's way and endangered the lives of many other motorists during the pursuit.
 
 
 8
 After all these attempted means had failed, Rice decided to use deadly force based on Cole's demonstrated lack of concern for other travellers and for the officers themselves. At the fifty-mile marker, Rice observed that the road was momentarily clear of civilian traffic. He radioed the other officers that he was going to shoot at the truck. To get an unobstructed shot at the truck, he first shot out the rear window of his patrol car with his shotgun. He then fired two rounds from his revolver at the truck, attempting to disable its engine. The second shot hit David Cole in the forehead.
 
 
 9
 Todd Cole, who had been in the truck's sleeper compartment and thus hidden from the troopers' view, then brought the truck to a stop. David Cole was transported to a Kansas City hospital, where he died from the gunshot wound.
 
 
 10
 David Cole's wife and children brought this section 1983 action, alleging various violations of David Cole's constitutional rights. They also filed a pendent state law claim for wrongful death. They alleged that Troopers Bone, Brown, Martinez, Messick, Rice, Rodenburg, Smith, and Stewart; Corporals Beydler and Holt; and Sergeant Spire were liable for their roles in the pursuit. Additionally, plaintiffs alleged that Corporal Beydler, Corporal Holt, Sergeant Spire, Lieutenant Mills, Colonel Fisher, Colonel Ford, Major Christman, Captain Bierle, and Captain Corbin were liable as supervisors of the troopers involved in the pursuit. Plaintiffs sued all defendants individually and in their official capacities.
 
 
 11
 Following some discovery, defendants moved for summary judgment, asserting that they were entitled to qualified immunity. The district court denied the motion, and defendants subsequently filed this interlocutory appeal pursuant to Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).
 
 II.
 
 12
 In reviewing a denial of summary judgment, we apply the same standard as that applied by the district court. See, e.g., Meester v. IASD Health Servs. Corp., 963 F.2d 194, 196 (8th Cir.1992). "A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.' " Nelson v. City of McGehee, 876 F.2d 56, 57 (8th Cir.1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); see also Fed.R.Civ.P. 56. Although a defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial, "the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Liberty Lobby, 477 U.S. at 256, 106 S.Ct. at 2514. A plaintiff opposing a properly supported motion for summary judgment may not rest upon the mere allegations in his pleadings, "but must set forth specific facts showing that there is a genuine issue for trial." Id.
 
 
 13
 Government officials performing discretionary functions are shielded from liability for civil damages by qualified immunity as long as their "conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In other words, to decide whether an official is protected by qualified immunity, a court must determine whether the official's action was objectively legally reasonable in the light of the legal rules that were clearly established at the time the action occurred. Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In Siegert v. Gilley, the Supreme Court announced that the threshold question in analyzing a qualified immunity claim is whether the plaintiff has alleged the violation of a constitutional right. --- U.S. ----, ----, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); see also, Peterson v. City of Plymouth, 945 F.2d 1416, 1419 (8th Cir.1991). The Court stated that a "necessary concomitant to the determination of whether the constitutional right asserted by a plaintiffs is 'clearly established' at the time the defendant acted is the determination of whether a plaintiff has asserted a violation of a constitutional right at all." Siegert, --- U.S. at ----, 111 S.Ct. at 1793. This threshold inquiry is one of law. Id.
 
 
 14
 Following Siegert's analytical structure, we first examine whether plaintiffs have alleged a violation of a clearly established constitutional right. Although plaintiffs assert a variety of constitutional violations in their complaint, the gravamen of their action is that the officers involved in the high speed pursuit unreasonably seized David Cole in violation of the Fourth Amendment. All claims that law enforcement officials used excessive force--deadly or not--in the course of making an arrest or other "seizure" of a free citizen are properly analyzed under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394-95, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989) (citing Tennessee v. Garner, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 1699-1700, 85 L.Ed.2d 1 (1985)).
 
 
 15
 In analyzing plaintiffs' unreasonable seizure claim, we begin by identifying the "seizure." Plaintiffs argue that David Cole was seized during the pursuit when the troopers attempted the rolling roadblock and the stationary roadblock. Defendants, on the other hand, argue that Cole was not seized until he was struck by the shot from Trooper Rice's revolver.
 
 
 16
 The question whether a seizure occurred is one of law that we determine de novo. United States v. McKines, 933 F.2d 1412, 1424-26 (8th Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).
 
 
 17
 In California v. Hodari D., the Supreme Court held that a seizure occurs only when the pursued citizen is physically touched by the police or when he submits to a show of authority by the police. --- U.S. ----, ----, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991). In adopting this definition, the Court expressly stated that an assertion of authority by the police without submission by the pursued citizen does not constitute a seizure. Id. at ----, 111 S.Ct. at 1550. More particularly, the Court stated that a seizure does not occur during the course of a police pursuit of a fleeing vehicle if the pursuit, as a show of authority, does not produce a stop. Id. at ----, 111 S.Ct. at 1552 (citing Brower v. County of Inyo, 489 U.S. 593, 596, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989)).
 
 
 18
 In view of the holding in Hodari D., we hold that Cole was not seized until he was struck by the shot from Trooper Rice's revolver. Cf. Garner, 471 U.S. at 7, 105 S.Ct. at 1699 (stating that apprehension by the use of deadly force is a seizure). The pursuit in and of itself did not constitute a seizure, because it did not produce a stop. Hodari D., --- U.S. at ----, 111 S.Ct. at 1552 (citing Brower, 489 U.S. at 596, 109 S.Ct. at 1381). Likewise, the shots that were fired at the truck and that did not hit Cole were not seizures because they too failed to produce a stop. Nor did the unsuccessful rolling roadblock and stationary roadblock constitute seizures. To constitute a seizure, a roadblock must have been meant to stop the citizen and it must actually succeed in stopping him. Brower, 489 U.S. at 599, 109 S.Ct. at 1382. In short, all of these actions constituted assertions of authority by the officers, but they were not seizures under the Fourth Amendment because Cole did not submit to any of them, nor did any succeed in stopping him.
 
 
 19
 The Fourth Amendment prohibits unreasonable seizures, not unreasonable or ill-advised conduct in general. Carter v. Buscher, 973 F.2d 1328, 1332 (7th Cir.1992) (citing Tom v. Voida, 963 F.2d 952, 957 (7th Cir.1992)). Consequently, we scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment. Id. at 1333. Accordingly, plaintiffs have failed to allege a constitutional violation against those defendants who did not seize Cole and who were not sued as supervisors. Those defendants are entitled to summary judgment.
 
 
 20
 Having held that Trooper Rice's shooting of Cole constituted a seizure under the Fourth Amendment, we now consider, viewing the record in the light most favorable to plaintiffs, whether plaintiffs have alleged facts sufficient to establish that the seizure violated the Fourth Amendment. In Tennessee v. Garner, the Court defined the circumstances in which an officer may reasonably employ deadly force:
 
 
 21
 Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.
 
 
 22
 471 U.S. at 11-12, 105 S.Ct. at 1701. See also Krueger v. Fuhr, 991 F.2d 435, 438 (8th Cir.1993).
 
 
 23
 In analyzing the reasonableness of Trooper Rice's decision to use deadly force, we examine the information that Rice possessed at the time of his decision. The " 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872; Krueger, 991 F.2d at 439. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make ... judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S.Ct. at 1872. Rice's subjective intent as to the lawfulness of his conduct is irrelevant. In excessive force cases "the question is whether the [officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to his underlying intent or motivation." Id. at 397, 109 S.Ct. at 1872.
 
 
 24
 We hold that Trooper Rice's decision to use deadly force to disable the truck was not objectively unreasonable. He had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves. Rice had seen the truck force several motorists off the road and threaten the safety of many others. He could reasonably have believed that the truck would continue to threaten the lives of travellers as it continued speeding down the crowded interstate highway. He knew that the truck had been careening through traffic for at least fifty miles and that it showed no signs of stopping. He knew further that all other attempted means to stop the truck--the rolling roadblock, the stationary roadblock, the shots at its tires and radiator--had been unsuccessful.
 
 
 25
 Moreover, Rice had probable cause to believe that Cole had committed a crime. He had received a radio report that the truck had attempted to force several police cars off the road in Kansas City. Additionally, he believed that Cole had attempted to ram his and Trooper Martinez's vehicles. Attempting to strike police officers with an automobile constitutes first degree assault under Missouri law. See, e.g., State v. McClain, 824 S.W.2d 103, 104 (Mo.Ct.App.1992); State v. Caldwell, 695 S.W.2d 484, 485 (Mo.Ct.App.1985). In the light of all of the information that was available to him, then, we find that Trooper Rice's use of deadly force was constitutionally reasonable under Garner.
 
 
 26
 The district court seemingly believed that Rice's conduct was legally unreasonable because it was not authorized under the policies of the Missouri Highway Patrol. We need not determine whether Trooper Rice violated Missouri Highway Patrol policy, however, for under section 1983 the issue is whether the government official violated the Constitution or federal law, not whether he violated the policies of a state agency. Conduct by a government official that violates some state statutory or administrative provision is not necessarily constitutionally unreasonable. Davis v. Scherer, 468 U.S. 183, 193-94, 104 S.Ct. 3012, 3018-19, 82 L.Ed.2d 139 (1984); Cf. Edwards v. Baer, 863 F.2d 606, 608 (8th Cir.1988) (citing Scherer, 468 U.S. at 194, 104 S.Ct. at 3019) (stating that police department guidelines do not create a constitutional right). State legislatures and government agencies are free to hold government officials to higher standards than the Constitution requires. Smith v. Freland, 954 F.2d 343, 347 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992).
 
 
 27
 It could be argued, of course, that Trooper Rice's decision to use deadly force might not have been the most prudent course of action; other courses of action, such as another stationary roadblock, might conceivably have been available. The Constitution, however, requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision. Graham, 490 U.S. at 396, 109 S.Ct. at 1871; Krueger, 991 F.2d at 439.
 
 
 28
 Because we have found that Rice's seizure of David Cole was constitutionally reasonable as a matter of law, plaintiffs have failed to assert a constitutional violation against Rice. Accordingly, it is thus unnecessary for us to reach Rice's contention that the district court erred in denying his claim of qualified immunity. Krueger, 991 F.2d at 440.
 
 
 29
 Last, we consider whether those members of the Missouri Highway Patrol sued as supervisors should remain in the lawsuit. Plaintiffs argue that these defendants are liable under section 1983 because they failed to adequately train and supervise the officers involved in the pursuit on the use of deadly force.
 
 
 30
 Government officials may be held liable for constitutional wrongs caused by their failure to train or supervise subordinates adequately. See, e.g., Boswell v. Sherburne County, 849 F.2d 1117, 1122 (8th Cir.1988) (citing Hahn v. McLey, 737 F.2d 771, 773 (8th Cir.1984) (per curiam)), cert. denied, 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989). Nevertheless, because we have found that plaintiffs have failed to establish that David Cole's constitutional rights were violated, they have no section 1983 claim against those defendants sued as supervisors. A vital element of any section 1983 claim is a showing that a right secured by the Constitution or federal law was violated. See Rubek v. Barnhart, 814 F.2d 1283, 1285 (8th Cir.1987). No such showing having been made, the defendants named as supervisors must also be granted summary judgment.
 
 
 31
 The district court's order denying the defendant's motion for summary judgment on qualified immunity grounds is reversed. The case is remanded with directions that summary judgment be entered in favor of all defendants. Whether the pendent state law wrongful death claim should proceed to trial in federal court under the district court's supplemental jurisdiction is a question for the district court to resolve in the first instance. 28 U.S.C. § 1367(c)(3). Cf. Rosado v. Wyman, 397 U.S. 397, 403-05, 90 S.Ct. 1207, 1213-14, 25 L.Ed.2d 442 (1970); United Mine Workers v. Gibbs, 383 U.S. 715, 725-26, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966); Brousard-Norcross v. Augustana College Ass'n, 935 F.2d 974, 979 (8th Cir.1991); Ronwin v. Dunham, 818 F.2d 675, 677 n. 6 (8th Cir.1987).
 
 
 
 *
 Judge McMillian would grant suggestion for rehearing en banc
 
 
 *
 The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation