```
                    United States Court of Appeals
                         for the eighth circuit
                           _____

                           No. 96-3975
                           _____

        Wayne Tauke, Assignee of the    *
        Estate of Dale R. Tauke,        *
                                        *
                Appellant,              *   Appeal from the United
States                                      
                                        *   District Court for the
Northern                                    
                v.                      *   District of Iowa.
                                        *
        Mark Stine; Leo Kennedy,        *
        Sheriff, Individually and as    *
        Sheriff of Dubuque County, Iowa;*
        Robert W. Elliott; Robert       *
        Fellin; and Jeff Ritzman,       *
                                        *
                Appellees,              *
                                        *
                and                     *
                                        *
        Paul Wiech, Individually and as *
        Commissioner of the Iowa        *
        Department of Public Safety;    *
        Iowa Department of Public       *
        Safety; Earl Usher, Individually*
        and as Commander of the Iowa    *
        Highway Safety Patrol; Iowa     *
        Highway Safety Patrol; and      *
        Dubuque County, Iowa,           *
                                        *
                Defendants.             *
                           _____
```

Submitted:  May 19, 1997

Filed:   August 1, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, and BOWMAN and MORRIS
      SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This is an appeal by Wayne Tauke, the brother of Dale Tauke, from orders dismissing his complaint against Sheriff Leo Kennedy and granting summary judgment in favor of the remaining defendants, four state law enforcement officers.  We affirm the lower court.(1)

I.

This case, brought under 42 U.S.C. § 1983, arises from an incident at Dale Tauke's farm in Iowa in which various state and county law enforcement officers, who were seeking to arrest Mr. Tauke, became involved in a standoff with him that ultimately ended in his being shot to death.  Two sheriff's deputies first arrived at Mr. Tauke's farm after his mother asked for assistance because she had become alarmed the previous day by Mr. Tauke's violent actions, which included shooting at the tires of her car.  She was concerned about his use of alcohol and feared for his safety.  When the deputies went to talk with him, Mr. Tauke, armed with two guns, met them on the porch.  He demanded that they leave his property, and threatened them with statements such as "Come in closer and we'll have this out now."  The deputies

(1)     The Honorable John A. Jarvey, Chief Magistrate Judge, United States District Court for the Northern District of Iowa, acting by consent of the parties.  See 28 U.S.C. § 636(c)(1); see also Fed. R. Civ. P. 73(a).

-2-

thereupon retreated from the house and set up positions on the perimeter of Mr. Tauke's property.

Although the Dubuque County Sheriff's Department initiated the siege on Mr. Tauke's property, after approximately twelve hours, Sheriff Leo Kennedy, deciding, he says, that he and his deputies needed rest, turned the operation over to the Iowa Highway Safety Patrol. At about the same time, an arrest warrant was issued charging Mr. Tauke with, among other things, assault with a deadly weapon and terrorism. The state law enforcement officers set up three posts to observe the house and to make an arrest if the opportunity arose. Repeated attempts to contact Mr. Tauke by phone and by loudspeaker were unavailing. He appeared outside his house from time to time, always well armed, and performed various tasks such as walking around the grounds to check on his livestock.

Approximately five hours after the state law enforcement officers took control of the siege, Mr. Tauke walked outside the house and approached within approximately twenty feet of a woodpile behind which Trooper David Shinker had positioned himself. Trooper Shinker attempted to arrest Mr. Tauke by revealing his presence, identifying himself, and repeatedly ordering Mr. Tauke to drop his weapons. Mr. Tauke refused, and instead demanded that Trooper Shinker leave his property. Mr. Tauke then fired his gun in the trooper's direction. A gunfight ensued in which Trooper Shinker fired his pistol three times, Mr. Tauke fired his rifle three times, and Trooper McGlaughlin, who was Trooper Shinker's partner and was in a backup position, fired his pistol three times. One of Mr. Tauke's shots hit Trooper Shinker in the hand, forcing him to drop his gun and retreat. (That it was Mr. Tauke's shot, and

not Trooper McGlaughlin's, that hit Trooper Shinker is not undisputed, but we find that it is the only reasonable inference from the evidence before us, including the affidavits of the troopers involved and the criminalists' reports.)  Trooper Shinker yelled back to Trooper McGlaughlin that he had been hit, and the latter communicated by radio to the

other officers at the scene that Trooper Shinker was wounded and needed medical attention.

Troopers Stine and Ritzman were positioned with a sniper rifle several hundred yards from the gunfight between Mr. Tauke and Trooper Shinker. Having heard the gunshots and the radio transmission, and having Mr. Tauke in the sight of his rifle, Trooper Stine asked Trooper Ritzman to request authorization from the command post to shoot Mr. Tauke. Lieutenant Richard Fellin gave the authorization to shoot, with the approval of Captain Robert Elliott. Trooper Stine fired approximately five shots at Mr. Tauke, who responded by ducking down. Trooper Stine then saw Mr. Tauke looking over a woodpile in Trooper Shinker's direction, and Trooper Stine fired two or three more shots. Mr. Tauke dropped to the ground. Trooper Stine next observed Mr. Tauke crawling toward some weeds and fired two more shots. Mr. Tauke stood and ran toward the cover of a pole barn. Soon thereafter, Trooper Stine observed Mr. Tauke walking, and still carrying two guns, and fired three more times. Mr. Tauke dropped from view. It was not until a helicopter was brought in to observe the scene that the troopers confirmed that Mr. Tauke had been hit. He was dead when they found him.

## II.

The primary question raised in this case is whether summary judgment for the state law enforcement officers was proper, that is, whether the force used on Mr. Tauke was objectively reasonable under the principles of the Fourth Amendment. As we have noted, "[a] seizure-by-shooting is objectively reasonable when 'the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.' " Gardner v. Buerger, 82 F.3d 248, 252 (8th Cir. 1996), quoting Tennessee v. Garner, 471 U.S.

1,
3 (1985).  In any particular case, "[w]e must balance  ' "the nature and quality of the intrusion on ... Fourth Amendment interests" against the countervailing governmental interests.'
"

Gardner, 82 F.3d at 252, quoting Graham v. Connor, 490 U.S. 386, 396 (1989), itself quoting United States v. Place, 462 U.S. 696, 703 (1983).

We applied these principles recently in Cole v. Bone, 993 F.2d 1328 (8th Cir. 1993). In Bone, 993 F.2d at 1331, a state police officer shot and killed a truck driver who was fleeing the police. The truck driver had eluded the police for more than fifty miles, traveling at high speeds through congested areas, forcing police and other cars off the road and showing no signs that he would give in to a roadblock or other tactic. Id. A police officer, traveling ahead of the truck, shot through the police car's rear window and struck the truck driver in the forehead. Id. The important question in the case, we said, was whether the police officer acted with objective reasonableness. Id. at 1333. Noting that the officer "could reasonably have believed that the truck would continue to threaten the lives of travellers as it continued speeding down the crowded interstate highway," we found that the officer "had probable cause to believe that the truck posed an imminent threat of serious physical harm to innocent motorists as well as to the officers themselves." Id. On this basis, we reversed a denial of summary judgment below, and remanded for the entry of summary judgment in the officer's favor. Id. at 1334. We conceded that the officer's decision "to use deadly force might not have been the most prudent course of action; other courses of action, such as another stationary roadblock, might conceivably have been available." Id. But we concluded that the Fourth Amendment "requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision." Id. In applying this principle to the fatal shooting of Mr. Tauke,

we note first that we are not blind to the tragic circumstances of the case.  Mr. Tauke was gunned down by a high-powered rifle on his own property.  The invasion of his constitutional interests was extreme, since "[t]he intrusiveness of a seizure by means of deadly force is unmatched."  Garner, 471 U.S. at 9.  But it is undisputed that the state law

enforcement officers were confronted with a man who refused to drop his weapon, despite repeated orders, and who instead fired the first shot, followed by several more. At the time that the authorization to shoot was given, moreover, all of the troopers at the scene were aware that Trooper Shinker had been wounded, and that his assailant was still armed and unwilling to surrender. It is clear to us that in these circumstances the officer giving the authorization to shoot, and the trooper who shot Mr. Tauke, could reasonably have believed that this was a situation in which there was a significant threat of death or serious physical injury to those at the scene. As noted before, we do not ask whether the course of action chosen was the most prudent or the wisest one. We ask only whether the decision to use deadly force was objectively reasonable, and we hold that it was as a matter of law.

### III.

The cause of action against Sheriff Kennedy based on his turning control of the relevant events over to the state law enforcement officers can be shortly dealt with. Whether it is construed as a respondeat superior claim, as the court below construed it, or as an independent claim for abandoning a duty imposed by state law, it fails because the other defendants did not deprive Mr. Tauke of any constitutional right, and therefore no claim under § 1983 can lie against anyone for Mr. Tauke's death.

### IV.

We thus affirm the orders of the lower court for the reasons indicated.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.