Marlon E. PARRIS, Plaintiff,

v.

TOWN OF ALEXANDER CITY, et al., Defendants.

No. Civ.A. 98–D–85–E.

United States District Court, M.D. Alabama, Eastern Division.

Feb. 10, 1999.

Kyla L. Groff, Alexander City, AL, Charles E. Robinson, Jr., Ashville, AL, for plaintiff.

Randall C. Morgan, Montgomery, AL, Alex L. Holtsford, Jr., Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court are Defendants Town of Goodwater ("Goodwater"), Harold Strong ("Strong"), and James Truitt's ("Truitt") Motion for Summary Judgment ("Motion") and Brief in Support of Their Motion ("Brief"), both filed on December 4, 1998. Plaintiff filed a Response to Defendants' Motion for Summary Judgment ("Response") on January 6, 1999. Defendants Goodwater, Strong, and Truitt filed a Reply ("Reply") on January 13, 1999.

Also before the court are Defendants City of Alexander City ("Alexander"), Lynn Royall ("Royall"), Jerry Whetstone ("Whetstone"), and Kendrick Norris' ("Norris") Motion for Summary Judgment ("Motion 2") and Brief in Support of Motion for Summary Judgment ("Brief 2"), both filed on December 7, 1998. Plaintiff filed a Response to Defendants' Motion for Summary Judgment ("Response 2") on January 6, 1999. Defendants Alexander, Royall, Whetstone, and Norris filed a Reply ("Reply 2") on January 13, 1999.

On January 6, 1999, Plaintiff filed a Motion to Strike ("Strike") various portions of

the evidentiary material attached to Defendants' Motions for Summary Judgment. Defendants Alexander, Royall, Norris, and Whetstone filed an Opposition to Plaintiff's Motion to Strike, which the court construes as a Response ("Response 3"), on January 13, 1999. Defendants' Goodwater, Strong, and Truitt filed a Response to Plaintiff's Motion to Strike ("Response 4") on January 14, 1999. Plaintiff filed a Reply to both Defendant Goodwater, Strong, and Truitt's Response ("Reply 3") and to Defendants Alexander, Royall, Norris and Whetstone's Response ("Reply 4") on January 20, 1999.

After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motions for Summary Judgment are due to be granted. The court also finds that Plaintiff's Motion to Strike is due to be denied as moot.[1]

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof

---

1. In Plaintiff's Motion to Strike, he challenges several portions of Defendants' affidavits that were submitted in support of their *Motions for Summary Judgment.* (Strike at 2–4.) However, the court finds it unnecessary to rely on the challenged portions of Defendants' affidavits. Consequently, the court finds that Plaintiff's Motion to Strike is due to be denied as moot because there is ample evidence to support Defendants' Motions for Summary Judgment without considering the portions challenged by Plaintiff.

at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

The events that occurred in this case are essentially undisputed, as the Defendants have supplied the court with a police video clearly depicting the details of a lengthy chase that ensued in the early morning hours of December 21, 1997. However, the court has construed all remaining inferences in the light most favorable to Plaintiff, as it is required to do in considering Defendants' Motions for Summary Judgment.

On the afternoon of December 20, 1997, Plaintiff went to his brother's house to drink beer. (Pl.'s Dep. at 34.) Plaintiff's brother's house is located approximately 200 yards from his own house. (*Id.* at 40.) Plaintiff drove his 1974 Jeep truck to his brother's house and carried a cooler with him in the back of the truck. (*Id.* at 38.) He arrived at approximately 6:00 p.m. and left around 10:00 p.m. (*Id.* at 39.) Plaintiff does not remember how much he drank during that four-hour period. (*Id.* at 40.)

When Plaintiff left his brother's house, he drove his truck home and went to bed. (*Id.*) He slept for approximately two hours, woke up, and decided he wanted more beer. (*Id.* at 41.) Because he had consumed all he had while he was at his brother's house, Plaintiff first drove to a service station approximately thirty minutes away in Goodwater, Alabama, but it was closed. (*Id.* at 42.) Plaintiff then drove to a service station approximately three or four miles away in Kellyton, Alabama. (*Id.* at 44.) Plaintiff drove even though his driver's license had been revoked for the past ten years for several convictions[2] of Driving Under the Influence ("DUI"). (*Id.* at 4-5.)

After purchasing a twelve-pack of beer at the convenience store in Kellyton, Plaintiff returned to his truck and drove West on U.S. Highway 280. (*Id.* at 45.) At approximately 1:00 a.m. on December 21, 1997, Defendant Norris, an officer with the Alexander City Police Department, observed Plaintiff driving with his right tires off the highway. (Norris' Dep. at 66.) Defendant Norris also observed that Plaintiff's vehicle did not have a registered license plate. (*Id.* at 67.) Defendant Norris turned on his blue lights, signaling for Plaintiff to stop his vehicle. (*Id.*)

Plaintiff admits that he saw Defendant Norris' lights, and knew that Defendant Norris was attempting to stop him, but Plaintiff refused to stop.[3] (Pl.'s Dep. at 48.) Defendant Norris then called his dispatcher, requested assistance, and in-

---

2. Plaintiff estimates that he has five previous DUI convictions, prior to the present incident. (*Id.* at 16.)

3. When asked why he didn't stop, Plaintiff testified that he did not want to return to jail, and that he was scared because "they had beat my brother before." (*Id.*)

formed the dispatcher of his location. (Norris' Dep. at 69.) Plaintiff turned off Highway 280 onto Hix Road. (Pl.'s Dep. at 56; Norris' Dep. at 72.) Hix Road is a dirt road, and Plaintiff thought the dirt road would assist him in eluding police since he was driving a four-wheel drive vehicle.[4] (Pl.'s Dep. at 59.) After driving for several miles on Hix Road, Plaintiff turned around in a driveway and headed back towards Highway 280. (Norris' Dep. at 70.) Defendant Grant, another officer employed by Defendant Alexander City, met Plaintiff on the highway and attempted to block Plaintiff with his vehicle, but Plaintiff drove around his car. (*Id.* at 72.) Defendant Grant fell in line behind Defendant Norris, and they both followed Plaintiff with their blue lights and sirens on. (*Id.*) The two officers were joined by yet another officer, Defendant Whetstone, and the three officers followed Plaintiff back to Highway 280. (*Id.*)

Once Plaintiff was back on Highway 280, Plaintiff swerved from lane to lane, trying to keep the officers behind him. (Pl.'s Ex. 1 (Videotape).) However, Defendant Whetstone was able to pass Plaintiff, and the officers attempted to stop Plaintiff with a rolling roadblock. (*Id.*) Plaintiff again eluded police custody by crossing the median of Highway 280, a four-lane highway, turning onto County Road 9, and traveling toward Goodwater, Alabama. (Pl.'s Dep. at 61–62.)

While on County Road 9, the officers attempted a number of maneuvers designed to stop Plaintiff's vehicle. (Pl.'s Ex. 1 (Videotape).) However, Plaintiff admits that he "more or less [drove] in the center of the road" in order to prevent the offi-

cers from stopping him. (Pl.'s Dep. at 63.) The entourage was joined by yet another officer, Defendant Truitt of the Goodwater Police Department, who approaching from the opposite direction attempted a road block, but Plaintiff again swerved off the road to evade capture. (*Id.*) Just before the Plaintiff entered the Town of Goodwater, an officer was able to pass Plaintiff. (*Id.*) After a twenty-minute chase, Plaintiff was forced into a parking lot and his truck was surrounded by police vehicles. (*Id.*)

Defendant Whetstone got out of his vehicle and went to the driver side of Plaintiff's vehicle. (Whetstone's Dep. at 59.) Officer Truitt went to the passenger side of Plaintiff's vehicle, opened the door and told Plaintiff to stop. (Truitt's Dep. at 50.) Instead of exiting his vehicle, Plaintiff shifted into reverse and began backing up. (Pl.'s Dep. at 68.) Plaintiff tried to get away because he saw "them pointing— pointing [weapons] directly at my windshield. And, you know, I was scared to death. I thought, you know, for sure, they're fixing to shoot me right through this windshield." (*Id.* at 67–68.)

Plaintiff began to back up even though Defendant Norris was parked in a police car directly behind Plaintiff's vehicle. In the process of backing up, Plaintiff injured one officer, Defendant Whetstone, and almost hit another officer.[5] Defendant Whetstone's leg was trapped between his patrol car and Plaintiff's moving vehicle. (Def's Ex. 4.) Defendant Truitt "heard Officer Whetstone was being injured by this motor vehicle. You could hear him screaming.... I could see him across through the cab of the truck and you could see him rolling down the side...."[6]

4. The Parties agree that Plaintiff's speed throughout the entire incident was no greater than 40–45 mph. (Norris' Dep. at 73.)

5. The videotape provided by the Parties clearly shows that one of the officers, who was parked to the right of Plaintiff's vehicle, exited his patrol car and had to quickly move out of the path of Plaintiff's truck to avoid getting injured. The court is not certain as to the specific identity of this officer, but finds that such identity is not relevant to its decision.

6. Even though in a summary judgment motion the court must construe the facts in the light most favorable to Plaintiff, the court finds that Plaintiff's argument that he did not injure the officer's leg is to be discounted for the following reasons. At the outset, the court notes that Plaintiff pleaded guilty to assault in the third degree, a misdemeanor, but he was actually charged with assault in the second degree, a Class C felony. (Pl.'s Dep. at 152–153; Def.'s Ex. E.) Furthermore,

(Truitt's Dep. at 53.) Defendant Norris moved his car, allowing Plaintiff's vehicle to pass. (*Id.* at 69.)

Defendant Whetstone fired his pistol several times at the driver's side door of Plaintiff's vehicle. (Whetstone's Dep. at 53.) Defendant Truitt also fired his pistol, but aimed at Plaintiff's tires. (Truitt's Dep. at 56.) At the time Defendant Whetstone fired, Defendant Truitt was standing approximately 30 to 35 feet in front of Plaintiff's vehicle, and the vehicle was moving toward him. (Whetstone's Dep. at 51–52.) At the time Defendant Truitt

fired, he had moved and was no longer in the path of Plaintiff's vehicle. (Truitt's Dep. at 56–57.) However, Truitt "didn't know whether or not [Plaintiff] would back up or not." (*Id.* at 58.)

Plaintiff managed to escape from the officers and drove away on a flat tire. (Pl.'s Dep. at 75.) After several more miles of chasing Plaintiff, Defendant Whetstone was able to position his vehicle in such a manner that he forced Plaintiff's vehicle off the highway and it struck a telephone pole. (Pl.'s Ex. 1 (videotape).) The officers arrested Plaintiff and discov-

Plaintiff admits to the guilty plea entered in connection with Defendant Whetstone's leg, and that he never appealed the state court judgment. (Pl.'s Dep. at 152–153.) However, Plaintiff now denies that he ever injured Defendant Whetstone's leg. (*Id.*)

The court finds that Plaintiff is estopped from arguing that he did not injure Defendant Whetstone's leg. Under the doctrine of collateral estoppel, a court may not consider testimony that diverges from sworn testimony in a prior court proceeding. *See, e.g., Taylor v. Food World, Inc.,* 133 F.3d 1419, 1422 (11th Cir.1998) (citation omitted.) Furthermore, the principle of collateral estoppel is "as appropriate to those decisions of criminal courts as to those of civil jurisdiction." *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951). In this Circuit, the use of a criminal conviction as conclusive of an issue in subsequent civil litigation is well-established. *See Matter of Raiford v. Abney,* 695 F.2d 521, 523 (11th Cir.1983).

This Circuit has also held that a plea of guilty to the charges against him estops a criminal defendant from maintaining an action for damages based on alleged constitutional violations leading to, or arising from, conviction. *See Brazzell v. Adams,* 493 F.2d 489 (5th Cir.1974). In *Brazzell,* the defendant pleaded guilty in state court to a charge of selling heroin. He then filed a § 1983 action against the state agents who participated in his arrest, alleging numerous constitutional violations and damages. In the civil case, Brazzell argued that he believed he was assisting state agents' investigation of a supplier and, hence, did not make a "sale" of heroin within the meaning of the statute. The Fifth Circuit held:

[A] determination of the fact in issue, to wit, whether appellant made a sale, was necessary to the earlier conviction.... 

[T]he general rule is that collateral estoppel applies equally whether the prior criminal adjudication was based on a jury verdict or a guilty plea.... We are satisfied that the general rule should be followed, especially where as here, the party barred by collateral estoppel has the option of challenging the earlier adjudication through a habeas corpus petition.

*Id.* at 490. Furthermore, under Alabama law, Plaintiff would also be precluded from contesting the facts upon which his guilty plea is based. *See Ex parte Howard,* 710 So.2d 460, 465 (Ala.1997) (stating that "[w]hen a guilty plea is accepted and entered by the court, it is a conviction of the highest order, and is an admission, of record, of the truth of whatever is sufficiently charged in the indictment.... A guilty plea is an admission of all the elements of the offense charged" (citation omitted)); *Durham v. Farabee,* 481 So.2d 885, 886 (Ala. 1985) (stating that "a person's conviction in a criminal case is admissible against him in a civil action to show that he did the act for which he was convicted") (citing *Yancey v. Farmer,* 472 So.2d 990 (Ala.1985)); *Fidelity–Phenix Fire Ins. Co. v. Murphy,* 226 Ala. 226, 146 So. 387 (Ala.1933) (stating that it is "agreed that, if the defendant interposed a plea of guilty, on which his conviction was predicated, the judgment of conviction in connection with such plea is admissible in a civil action, for it is then in the nature of an admission of the facts").

Thus, the court finds that because Plaintiff pleaded guilty to assault in the third degree for the injury to Defendant Whetstone's leg, he is now estopped from denying that he injured his leg. Therefore, even construing the facts in the light most favorable to Plaintiff, the court is free to consider the fact that Plaintiff injured Defendant Whetstone's leg when he attempted to escape from the officers.

ered that he had been shot in the left hip. (*Id.*) Plaintiff was given medical treatment on the scene and then taken to the hospital. (Pl.'s Dep. at 154.)

As a result of Plaintiff's actions, Plaintiff pleaded guilty in the Circuit Court of Coosa County, Alabama, to driving on the wrong side of the road, attempting to elude a police officer, assault in the third degree, driving under the influence of alcohol,[7] and driving with a revoked license. (Def.'s Exs. A–E.) Plaintiff subsequently filed suit in this court on January 29, 1998, arguing that the officers violated 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments by their use of deadly force. (Pl.'s Compl. ¶ 35.) Plaintiff also argues that Defendants Goodwater and Alexander City are liable due to inadequate training and supervision of their officers. (*Id.*) Plaintiff further argues that Defendants are liable under a number of state law causes of action. (*Id.* at 13–35.) The court will now examine the merits of Defendants' Motions for Summary Judgment.

## DISCUSSION

Defendants move for summary judgment on two grounds. Defendants first assert that the officers' actions, as a matter of law, do not constitute excessive force in violation of the Fourth Amendment and that they are therefore, entitled to qualified immunity.[8] (Def. Alexander's Br. 2 at 5–7; Def. Goodwater's Br. at 9–20.) Defendants also assert that Plaintiff has failed to establish a genuine issue of material fact with regard to his state law claims. (Def. Alexander's Br. at 12–14;

Def. Goodwater's Br. at 31–39.) Because the court finds that Plaintiff has failed to show a constitutional violation, the court reaches only the first of Defendants' assertions.

Plaintiff alleges that Defendants violated § 1983 by their unjustified use of deadly force. (Pl.'s Resp. 2 at 8.) Plaintiff initially argues that Defendants did not have probable cause to believe that Plaintiff posed a threat of serious harm to the officers or others. (*Id.* at 9.) Additionally, Plaintiff argues that he did not qualify as a "fleeing felon" within the meaning of *Acoff v. Abston,* 762 F.2d 1543, 1547 (11th Cir.1985). (*Id.*) Instead, Plaintiff argues that he violated misdemeanor traffic laws and that the use of deadly force is not justified in effectuating a traffic stop. (*Id.*)

Qualified immunity shields government officials performing discretionary functions[9] from civil litigation and liability where "their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once public officials prove that they are acting within the scope of their discretionary authority when the allegedly wrongful act occurred, the burden shifts to the claimant to demonstrate that the public official being sued violated a clearly established right. *Swint v. City of Wadley,* 5 F.3d 1435, 1439 (11th Cir.1993). To prove that a right was clearly established, a plaintiff must show that when the defendant acted, the law was "developed in

---

**7.** Plaintiff's blood alcohol content was .15 and he had traces of antihistamines and Demerol in his system. (Def.'s Ex. 8.) Plaintiff admits that he was intoxicated and that his thought processes had been altered. (Pl.'s Dep. at 74.)

**8.** Although Plaintiff's Complaint alleges a violation of both the Fourth and Fourteenth Amendments, in his Response Brief, Plaintiff has limited his argument solely to the Fourth Amendment. The court finds, therefore, that Plaintiff has abandoned his Fourteenth Amendment argument and that it need not reach the merits of this claim. Because De-

fendants have also moved for summary judgment on Fourteenth Amendment grounds, and Plaintiff has failed to respond, the court further finds that Defendants are entitled to Summary Judgment with regard to Plaintiff's Fourteenth Amendment Claim.

**9.** The Parties do not dispute that Defendants Norris, Whetstone, Strong, and Truitt were acting within their discretionary authority. The dispositive issue for the court, therefore, is whether Plaintiff has proven that Defendants' actions violated clearly established constitutional rights.

such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir.1994) (en banc) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const.Amend. 4. Thus, the court must determine whether a seizure occurred. The Supreme Court has held that seizure occurs only when a fleeing person is physically touched by police or when he or she submits to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (stating that "[a]n arrest requires either physical force ... or, where that is absent, submission to the assertion of authority"). Under this test, a police officer who chases a fleeing suspect unsuccessfully has not seized that person. *Id.; see also County of Sacramento v. Lewis*, 523 U.S. 833, ——, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998) (stating that attempted seizures of a person are beyond the scope of the Fourth Amendment). Similarly, an officer who yells "Stop, in the name of the law!" at a person who continues to flee has not effected a seizure. *Id.* Hence, the court finds that Plaintiff in the instant case was not seized during the police chase of his vehicle. *See Lewis*, 118 S.Ct. at 1715 (holding that Fourth Amendment did not apply to high-speed chase that resulted in death of motorcycle passenger, as police pursuit was not a seizure).

■ However, " 'an officer effects an arrest of a person whom he has authority to arrest, by laying his hand on him for the purpose of arresting him, though he may not succeed in stopping and holding him.' " *Id.* at 624, 111 S.Ct. 1547 (citing *Whithead v. Keyes*, 85 Mass. 495, 501 (1862)). Therefore, the language in *Hodari* leads this court to conclude that when law enforcement officers shoot at a fleeing suspect, a "seizure" occurs only if the shot strikes the fleeing person or if the shot causes the fleeing person to submit to the officer's show of authority.

■ Accordingly, the court finds that Plaintiff was not seized when Defendants shot his tires. Rather, Plaintiff was seized when Defendants shot Plaintiff in the hip through his truck door. Because Plaintiff was actually shot by Defendants, even though he did not submit to Defendants' show of authority, the court finds that Plaintiff was physically touched, and therefore, Plaintiff was "seized" for the purposes of Fourth Amendment protection. *See Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993) (holding that the driver was seized only when he was struck by a bullet, not when he was pursued by the officers, when they attempted rolling and stationary roadblocks, nor when they fired shots that struck the truck); *Clark v. Nassau County*, No. 89–1000–CIV–J–14, 1991 WL 350041 (M.D.Fla. Sept.11, 1991) (finding that a fleeing suspect in a car was seized only when an officer actually shot him, not when several officers previously shot his vehicle's tires in an effort to stop him); *Cf. Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir.1994) (finding that although the shots fired by the officer hit the plaintiff's helicopter, they did not result in a seizure because they did not cause the plaintiff to submit nor did they strike the plaintiff). Thus, because the court finds that Defendants' actions of shooting Plaintiff in the hip constitute a seizure, the court will analyze Plaintiff's claim under the Fourth Amendment.

■ The issue remaining for resolution is whether the seizure itself, i.e., the shooting of Plaintiff's hip, was reasonable under the circumstances. The reasonableness inquiry in a Fourth Amendment excessive force case is an objective one. *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865. The question is whether the officer's actions were objectively reasonable in light

of the facts confronting the officer, regardless of the officer's underlying intent or motivation. *See id.* at 397, 109 S.Ct. 1865. Furthermore, the court must make "allowance for the fact that police officers are often called upon to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. Thus, the reasonableness of any particular seizure "must be judged from the perspective of a reasonable officer on the scene, rather than with the $20/20$ vision of hindsight." *Id.*

In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Supreme Court defined the circumstances in which an officer may reasonably employ deadly force. The Court did not forbid all use of deadly force in seizing suspects; rather, it established the following rule:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Id.* at 11–12, 105 S.Ct. 1694. The Eleventh Circuit has interpreted the *Garner* standard to require the following:

> First, an officer must have probable cause to believe the suspect poses a threat of serious physical harm to the officer or to others. Probable cause of this sort exists where the suspect actually threatens the officer with a weapon or where there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Second, deadly force must be necessary to prevent escape. Third, the officer must give some warning regarding the possible use of deadly force whenever feasible.

*See Acoff,* 762 F.2d at 1547. Furthermore, the requirement of probable cause is not actual probable cause, but only " 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Montoute v. Carr,* 114 F.3d 181, 184 (11th Cir.1997).

Defendants argue that the use of deadly force was reasonable under the circumstances, and the court agrees. Specifically, the court finds that at the time Defendants Truitt and Whetstone fired their weapons, Plaintiff had already injured Officer Whetstone with his vehicle, and nearly injured another.[10] Thus, even if Plaintiff had no intent to injure the officer, and was merely trying to escape, it was not objectively unreasonable for the officers to believe that they were responding to an aggravated assault against a police officer, which is a felony under Alabama law. *See* Ala.Code § 13A–6–21(a)(3) (1975). Therefore, the court finds that Defendants had probable cause to believe that Plaintiff had committed a felony by assaulting a police officer and were justified in their use of deadly force. *See Cole v. Bone,* 993 F.2d 1328 (8th Cir.1993) (finding officer's use of

---

10. Plaintiff argues that because he pleaded guilty to assault in the third degree, which is a misdemeanor under Ala.Code § 13A–6–22 (1975), instead of assault in the second degree, that he is not a fleeing felon within the meaning of *Garner.* The court disagrees. It is plain that the reasonableness of the officer's actions are measured at the time of the incident, and not with $20/20$ hindsight. *See Graham,* 490 U.S. at 396, 109 S.Ct. 1865. At the time of the incident, it was reasonable for the

officers to believe that Plaintiff had committed assault in the second degree by injuring Defendant Whetstone. Furthermore, because the test only requires "arguable probable cause" ... "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Montoute,* 114 F.3d at 184.

deadly force was reasonable when officer had probable cause to believe that Plaintiff's truck had attempted to force several police cars off the road, and striking police officers with an automobile constitutes first degree assault); *see also Puglise v. Cobb County, Georgia,* 4 F.Supp.2d 1172 (N.D.Ga.1998) (finding that officer's use of deadly force was reasonable seizure under Fourth Amendment because every time Plaintiff moved to escape by driving his truck, he threatened officers on foot and in their patrol cars).

Furthermore, there is no disputing the fact that when Plaintiff put his truck in reverse, he was driving directly toward an officer standing in his path. That much is plainly visible to the court on the videotape supplied by the Parties. The officer avoided serious injury only by quickly jumping out of the path of Plaintiff's moving vehicle and not through any actions on the part of Plaintiff. *See Drewitt v. Pratt,* 999 F.2d 774 (4th Cir.1993) (finding that officer was entitled to qualified immunity for the use of deadly force even though he was trying to arrest misdemeanor suspect because suspect sped toward officer with car and officer was justified in shooting suspect to prevent his death or grievous bodily harm); *Fraire v. City of Arlington,* 957 F.2d 1268, 1274–76 (5th Cir.1992) (holding that officer's act of shooting motorist was not excessive force because motorist could have hit officer with his pickup truck and under the circumstances, the truck constituted deadly weapon).

Plaintiff argues, however, that at the time Defendants Whetstone and Truitt fired at him, he did not pose any threat to the officers because he was driving away. However, the court finds that Plaintiff's argument overlooks the fact that Plaintiff had already injured Defendant Whetstone and nearly injured another officer. Given the fact that Plaintiff had already backed his vehicle up once in disregard of the nearby officer's safety, and that Plaintiff was obviously intoxicated and did not appear to be thinking clearly, the court finds that it was reasonable for Defendant Truitt to believe he might back up his truck again in the future.

Furthermore, the court finds that it was reasonable for Defendants to believe that without the use of deadly force, Plaintiff would escape. It is undisputed that Plaintiff failed to yield to Defendants' numerous displays of authority. For instance, Defendants previously attempted a number of maneuvers designed to stop Plaintiff in a peaceful manner, including standard and rolling roadblocks, yet Plaintiff continued to avoid arrest. In fact, even after Defendant Truitt shot one of Plaintiff's tires, Plaintiff still attempted to evade capture.

Additionally, the court notes Plaintiff's argument that Defendants did not provide the requisite warning prior to firing their weapons. However, the court finds that under the exigent circumstances, such inadvertence does not render Defendants' use of deadly force constitutionally unreasonable. *Garner* only requires officers to give a warning "where feasible," 471 U.S. at 12, 105 S.Ct. 1694, and although the court would have preferred the officers to do so, it will not impose an absolute requirement here.

Thus, based on the fact that the events unfolded in such a short period of time, and that Plaintiff injured one officer and his actions threatened to injure the surrounding officers, the court cannot conclude that Defendants used excessive force in violation of the Fourth Amendment. The court finds that Plaintiff has failed to prove that, under the circumstances, no reasonable officer could have believed that Plaintiff posed a risk of serious physical injury to the officers or the others. Accordingly, because Plaintiff has failed to allege a violation of a constitutional right, the court finds that Plaintiff cannot maintain his cause of action under § 1983 against Defendants.

The court notes that Plaintiff has also asserted several state law causes of action. However, the court declines to exercise supplemental jurisdiction over the state law claims, due to its finding that summary

judgment is due to be granted with respect to Plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's state law claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3), for lack of subject matter jurisdiction. Under 28 U.S.C. § 1367(d), Plaintiff may refile the state law claims in state court within thirty days of this Order or within the remaining period of the appropriate state statute of limitations, whichever is longer.

### Order

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motions for Summary Judgment be and the same are hereby GRANTED with respect to Plaintiff's § 1983 claim. It is further CONSIDERED and ORDERED that Plaintiff's supplemental state law claims be and the same are hereby DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c). It is further CONSIDERED and ORDERED that Plaintiff's Motion to Strike be and the same is hereby DENIED AS MOOT.